Argued February 6; affirmed March 11, 1947

# ALPHA PHI OF SIGMA KAPPA *v.* KINCAID

### (178 P. (2d) 156)

*L. L. Ray,* of Eugene (Ray & Pennington on brief), for respondent.

*H. E. Slattery,* of Eugene, for appellant.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY, HAY and WINSLOW, Justices.

BELT, J.

This is a suit to compel specific performance of a contract to sell Lot 10, Block 2, and the east 35 2/3 feet of Lot 9, Block 2, Kincaid Addition, in the city of Eugene. On October 11, 1945, the defendant owner of this property, who resides in Portland, wrote a letter to Mr. Hyde of the C. F. Hyde Realty Company, Eugene, Oregon, expressing her desire to sell the property for the sum of $5000, and requesting that the realtor advise her "if any of your parties are interested." The realtor thereafter succeeded in obtaining an offer from the plaintiff to purchase the property for the sum of $5250 as evidenced by the Earnest Money Receipt executed by the plaintiff on November 6, 1945. The sum of $100 was paid as earnest money and in part payment of the purchase price. This Earnest Money Receipt contained all of the essential elements of an offer to purchase real property, and would, if accepted by the owner, constitute a valid

contract to sell and convey the property in question. It also provided that the C. F. Hyde Realty Company was to be paid, by the owner, $250 as commission for services rendered if the sale was consummated. The Earnest Money Receipt was transmitted to the defendant for her acceptance. The defendant was not satisfied with certain dates specified in the Earnest Money Receipt, and she made four changes or alterations concerning the same before she signed the instrument. After having signed the Earnest Money Receipt as altered, she forwarded the same to her real estate broker at Eugene. This counter-offer of the owner was submitted by the broker to the plaintiff.

The plaintiff claims that this counter-offer was orally accepted, and that therefore there is a valid contract. The defendant asserts that there was no acceptance of her counter-offer to sell this property. More specifically, the defendant contends: (1) that the Earnest Money Receipt was never delivered to the plaintiff after it was signed by her; (2) that there was no meeting of the minds concerning the transaction; (3) that she never had notice or knowledge of any acceptance of her counter-offer. It thus appears that the sole issue in this case is whether it is established by the preponderance of the evidence that there was an acceptance of the counter-offer.

■ It is established with certainty that the C. F. Hyde Realty Company was authorized to procure a purchaser who was ready, able and willing to buy this property on terms approved by the defendant owner. It is also clear—indeed, there is no contention to the contrary—that the signing of the Earnest Money Receipt by the defendant—she being the person charged— satisfied the Statute of Frauds.

■ It was not necessary to deliver the Earnest Money Receipt to the plaintiff. When defendant sent the instrument back to her agent, there was no necessity for him to deliver the same to the plaintiff. 49 Am. Jur., Statute of Frauds, § 390; Williston on Contracts (Rev. ed.) Vol. 2, 1666, § 579A. Hyde Realty Company was designated by the defendant as the proper agency to receive the acceptance of the counter-offer. Communication of an acceptance may be made to an agent if he is expressly or impliedly authorized to receive it. 66 C. J. 528.

■ It is established by the great weight of authority that an oral acceptance of a written offer to sell property on certain definite terms, signed by the party to be charged, is sufficient. In 49 Am. Jur., Statute of Frauds, § 389, it is said:

" * * * the rule supported by the weight of authority that a written offer signed by the party to be charged, if orally accepted by the person to whom it is made, may itself constitute a sufficient written memorandum of the contract, binding the person by whom the offer is made, although the other party may successfully plead the statute. In such case, if the memorandum is otherwise sufficient, when it is assented to by him to whom the proposal has been made, the contract is consummated by the meeting of the minds of the two parties, and the evidence necessary to render it valid and capable of enforcement is supplied by the signature of the party sought to be charged to the offer to sell or buy."

In 27 C. J. 266, § 316, it is stated:

"By the great weight of authority, a written offer accepted by parol may constitute a sufficient memorandum of the contract, provided the person making the offer is the party to be charged, and the written offer contains all the essential terms

of the proposed contract." citing *Friendly v. El-wert,* 57 Or. 599, 105 P. 404, 111 P. 690, 112 P. 1085, Ann. Cas. 1913A, 357, which supports the text.

■ After the real estate broker was notified by the plaintiff that the counter-offer had been accepted, the broker communicated such acceptance to the defendant. C. F. Hyde, the broker, testified that he duly mailed a letter, dated November 15, 1945, to the defendant—a carbon copy of which was introduced in evidence—advising her that the changes made in the Earnest Money Receipt were satisfactory to the plaintiff and it was "ready to go ahead and close the deal on your terms." The defendant denied having received the letter, but we think the evidence shows that she is wrong in such contention. The presumption that she did receive the letter (§ 2-407, subd. 24, O. C. L. A.) is greatly strengthened by the fact that her son, Harrison R. Kincaid, an attorney at law in Portland, Oregon, went to Eugene on November 19, 1945, to see about closing the deal. At that time, he knew that the changes in dates made by his mother were satisfactory to the plaintiff. The defendant denied that her son was authorized to act for her, but it is believed that he was so authorized. The counter-offer signed by the defendant was turned over to the son, who, on November 8, 1945, mailed it to the real estate broker. It is significant that defendant's son was not called as a witness.

■ Although there is no evidence of any formal action of the Board of Directors relative to the acceptance of the counter-offer, we think such acceptance is nevertheless established by other evidence, which it is observed was received without objection. Indeed, no challenge was ever made by defendant as to the au-

thority of any person purporting to act for the corporation.

Mr. Hyde testified that he was informed by L. F. Newland, who acted in an advisory capacity to this national sorority, that the officers of the sorority had approved the changes made in the Earnest Money Receipt by the defendant. Marjorie Johnson, who is the Resident Counselor of the local chapter, testified that this business transaction was "talked over with the girls" and the members of the Board of Directors and that they had approved the alterations made by the defendant. Miss Virginia Simpson, who was president of the plaintiff corporation and also a member of its Board of Directors, testified about the above-mentioned alterations in the Earnest Money Receipt and that the changes met with her approval. Mr. Newland testified that he called several members of the plaintiff corporation concerning the alterations, and that he advised Mr. Hyde that they would be acceptable. Shirley Sanborn, who was treasurer of the corporation and also a member of the Board of Directors, testified that as a member of the Board she approved the changes made by the defendant.

■■ We need not be concerned with the original offer of the plaintiff to purchase the property, as such offer was not accepted by the defendant. The Earnest Money Receipt was signed "Alpha Phi of Sigma Kappa, by Marjorie Dale Johnson." Just what authority Marjorie had to bind the corporation does not appear. The mere fact that the "girls in the House" had talked the matter over and approved the counter-offer would not be evidence of any corporate act. However, the testimony of Shirley Sanborn and Virginia Simpson, who were members of the Board of Directors,

is some evidence that the Board authorized the acceptance of the counter-offer. As stated in 13 Am. Jur., Corporations, § 746:

"Generally speaking, the assent of the directors of a corporation is necessary to validate a corporate act, but it is not always essential to action by the corporation that it be in pursuance of a formal resolution of the board of directors, as corporations may be bound by implication as well as individuals."

Furthermore, it will be recalled that plaintiff corporation paid $100 as earnest money on the purchase price, and which has been retained by the agent of the defendant.

■ After the acceptance of the counter-offer, which, in our opinion, resulted in the consummation of the contract, the defendant continued to negotiate with the plaintiff and insisted that an additional sum of $400 be paid as earnest money. The plaintiff was willing to comply with this request, and paid such sum to the real estate broker. Whereupon, on November 19, 1945, a second Earnest Money Receipt was signed by the plaintiff and the same was forwarded to the defendant for her signature. The defendant, however, refused to sign the second Earnest Money Receipt. It appears that she had agreed to sell this property to another party at a higher price. In our opinion, this evidence of what transpired subsequent to the acceptance of the counter-offer is wholly immaterial, as there was no repudiation by plaintiff of the contract consummated by an acceptance of the defendant's counter-offer.

The decree of the circuit court that the contract be specifically performed is affirmed. Plaintiff is entitled to costs and disbursements.