Argued March 3, affirmed April 29, 1949

# DAVIS ET AL. *v.* DUNIGAN ET AL.
### 205 P. 2d 839

*Steve Anderson* and *W. C. Winslow,* of Salem, argued the cause and filed a brief for appellants.

*Peery T. Buren,* of Salem, argued the cause and filed a brief for respondents.

Before Lusk, Chief Justice, and Belt, Rossman, Kelly and Bailey, Justices.

BAILEY, J.

This suit was brought by plaintiffs, Blandina K. Davis and Bernard Davis, her husband, and Blandina Kenny, against defendants, Maurice R. Dunigan and Idyle Dunigan, his wife, to require the defendants to specifically perform an alleged contract by the terms of which defendants agreed to sell and plaintiffs agreed to buy certain described real property in the City of Salem, Marion County, Oregon. From a decree granting plaintiffs the relief prayed for, defendants have appealed.

Defendants, on or about the 21st day of March, 1947, listed with Grabenhorst Bros., real estate brokers, residential property at 240 N. 13th Street, Salem, Oregon, for sale at the price of $16,000. On or about the 25th day of July, 1947, Grabenhorst Bros., as agents for defendants, received from plaintiffs an offer to purchase the above described property for $13,500, and a check of one of the plaintiffs for $500 "as earnest

money and in part payment for the purchase'' of such property. The following day Grabenhorst Bros., as such agents, prepared, signed as agents, and caused to be signed by plaintiffs and defendants, an earnest money receipt which, so far as material here, reads as follows:

## "EARNEST MONEY RECEIPT

"Received of Blandina K. Davis and Bernard C. Davis, husband and wife, and Blandina Kenny, a widow, hereinafter mentioned as the Purchaser, the sum of Five Hundred and no/100 ($500.00) Dollars as earnest money and in part payment for the purchase of the following described real estate situated in the City of Salem, County of Marion, State of Oregon, and more particularly described as follows, to wit: [Here follows the description of the real property and also certain personal property] which we have this day sold to the said Purchaser for the sum of Thirteen Thousand Five Hundred and no/100 ($13,500.00) Dollars on the following terms, to wit: The sum of Five Hundred and no/100 ($500.00) Dollars as hereinabove receipted for; Thirteen Thousand and no/100 ($13,000.00) Dollars upon acceptance of title and delivery of Warranty Deed

"This offer is subject to the owners [purchasers] receiving their money from the Salem Title Company from the sale of a property located at 1130 Marion Street, Salem, Oregon and this transaction will be closed just as soon as said money is received from said title company for the sale of the property at 1130 Marion Street, which should not be later than September 10, 1947 and possibly sooner.

"Seller to pay ½ Title Ins. Prem or will bring abst to date

"A marketable Title Insurance Policy is to be furnished the Purchaser forthwith

"It is agreed that if the owner does not approve

the above sale * * * the earnest money herein receipted for shall be refunded. * * *

"Time is the essence of this contract.

> "GRABENHORST BROS., Agents
> "By Coburn L. Grabenhorst

---

"I hereby agree to purchase the above property and pay the price of Thirteen Thousand Five Hundred and no/100 ($13,500.00) Dollars as specified above.

> "Blandina K. Davis Purchaser
> "Bernard C. Davis
> "Blandina Kenny

"I hereby approve and accept the sale of above described property and the price and conditions set forth in above contract * * *.

> "Maurice R. Dunigan Owners
> "Idyle Dunigan"

After the word "owners" in the earnest money receipt, we have inserted in brackets the word "purchasers" in conformity with the understanding of the interested parties.

Mr. Dunigan testified that a day or two after the earnest money receipt was executed, he, at the instance of Gene Grabenhorst, called on Mrs. Kenny and told her that he and his wife had "definitely decided not to go through" with the real estate deal; that Mrs. Kenny asked him to wait until her daughter, Mrs. Blandina Davis, returned and talk to her; that he "waited until 9:30 and I went home and I returned on the following afternoon and I told Mrs. Davis * * * that we were going to definitely not have anything to do with the sale of the place"; and that Mrs. Davis refused

to release him from the contract except upon payment to her of $500, which he refused to do. On August 18, 1947, defendants' attorney wrote a letter to the plaintiffs in which he stated that it was apparent to him that the earnest money receipt was simply a unilateral agreement, or an option, and could not be enforced by Mr. and Mrs. Dunigan and therefore "they have directed me to state that it is not their desire to attempt to hold Mrs. Kenny and Mr. and Mrs. Davis to buy their property under the proposal and they authorize Grabenhorst Bros. to return the money to those entitled thereto, and proposal of sale and purchase is definitely off." Neither the defendants nor their agents, Grabenhorst Bros., returned, or offered to return, to the plaintiffs the $500 which plaintiffs paid as part of the purchase price of the property.

Plaintiffs, on September 8, 1947, delivered to Grabenhorst Bros. a check for $13,000, signed by Blandina K. Davis, payable to defendants. Prior to the date of that check plaintiffs had received their money from the sale of the property located at 1130 Marion Street. The check was tendered by the real estate brokers to the defendants, who refused to accept it. Mr. Dunigan testified that he would not have accepted the tender even if it had been made in cash. The check was retained by the brokers and was in their possession at the time of the trial.

Defendants' brief contains only one assignment of error, which is "that the Court erred in entering a decree compelling specific performance of the document in suit and in not dismissing the suit and entering a decree in favor of appellants." Two propositions are discussed. Under the first proposition it is argued that there "was no meeting of the minds of the parties with

reference to the matter of who should pay for one-half the title insurance.''

■■ The earnest money receipt contains the following printed words: ''A marketable Title Insurance Policy is to be furnished the Purchaser'', which are followed by the typewritten word ''forthwith''. Written immediately above that provision is the following: ''Seller to pay ½ Title Ins. Prem. or will bring abst to date''. If these two provisions of the document are inconsistent the writing will prevail over the printing. § 2-220, O. C. L. A. And handwriting will similarly prevail over typewriting. 17 C. J. S., Contracts, § 310, p. 728. The printed clause implies that the title insurance policy is to be furnished the purchasers by the sellers, presumably at the latter's expense. The written clause, however, provides that only one-half of the premium is to be paid by the sellers. This relieved the sellers from paying the entire premium, and it impliedly imposed on the purchasers the duty of paying the other half if they desired a title insurance policy. But the sellers were not required to pay even one-half of such premium, for they had the option of paying it or furnishing the purchasers with a completed abstract of title. We see no merit in defendants' first contention.

Under defendants' second proposition it is argued that the ''earnest money agreement in suit is a contingent or conditional agreement and was expressly terminated by appellants prior to the happening of the contingency or condition''. In support of this contention defendants rely upon the following provision in the earnest money receipt, to wit:

''This offer is subject to the owners [purchasers] receiving their money from the Salem Title Company from the sale of a property located at 1130

Marion Street, Salem, Oregon and this transaction will be closed just as soon as said money is received from said title company for the sale of the property at 1130 Marion Street, which should not be later than September 10, 1947 and possibly sooner.''

Defendants contend that ''the contract never became binding on any of the parties until the happening of this event. In other words, the parties made a deal for the sale of property, respondents agreeing to buy, and appellants agreeing to sell, dependent upon the happening of a future event. In this case the record is clear that before that event happened appellants withdrew from the contract.''

The offer to purchase the property for $13,500 was made by the plaintiffs and accepted by the defendants. The offer provided that ''this transaction will be closed just as soon as'' the money is received by the plaintiffs from the sale of certain designated property. At the time the offer was made plaintiffs paid to defendants $500 to apply on the purchase price, and prior to September 10, 1947, paid to defendants' agents the balance of the purchase price.

■ Construing the entire contract between the parties it is apparent that the defendants agreed to sell to the plaintiffs, and the plaintiffs agreed to purchase from the defendants, the property here involved for $13,500. The signed agreements at the bottom of the earnest money receipt so state. The provisions quoted from the contract, in reference to the receipt by the purchasers of certain money, do not affect the validity of the contract between the parties but relate to the liability thereunder of the parties to the contract. The following excerpt from 2 Williston on Contracts, § 666, p. 1283, is quoted with approval in *Hoffman v. Em-*

*ployer's Liability Corp.*, 146 Or. 66, 73, 29 P. (2d) 557, and is pertinent to the facts in this case:

" * * * In the law of contracts, conditions may relate to the formation of contracts or to liability under them. It is a source of confusion of thought that the word condition is frequently used without exact recognition of what the supposed condition qualifies. Generally in contracts when reference is made to conditions, what is meant is conditions qualifying liability under a contract or promise, not conditions qualifying the existence of a contract or promise. * * * A condition may qualify the liability of one party to the contract or of both parties. *The fact that no liability on either side can arise until the happening of a condition does not, however, make the validity of the contract depend upon its happening.* Whether there is a contract depends upon the right of the parties to revoke their promises." (Italics supplied.)

See also 2 Williston on Contracts, Revised Edition, § 666, p. 1911. 17 C. J. S., Contracts, § 338, p. 792.

■ We are of the opinion that there was a valid and binding contract between plaintiffs and defendants and that the Circuit Court did not err in entering a decree in favor of the plaintiffs.

The decree appealed from is therefore affirmed.

Kelly, J., did not participate in this decision.