Argued March 9, affirmed April 19, 1967

# ANAHEIM COMPANY, *Appellant, v.* HOL-COMBE ET AL, *Respondents.*

426 P. 2d 743

*Michael F. McClain,* Corvallis, argued the cause for appellant. On the brief were Ringo, Walton & McClain, Corvallis.

*Laverne M. Johnson,* Corvallis, argued the cause for respondents Holcombe and Mariner. On the brief were Thomas & Johnson, Corvallis.

*Richard T. Kropp,* Albany, argued the cause for respondents Jelen. On the brief were Willis, Kyle, Emmons & Kropp, Albany.

Before PERRY, Chief Justice, and GOODWIN, DENECKE and REDDING, Justices.

REDDING, J. (Pro Tempore).

The plaintiff appeals from a judgment dismissing its complaint with prejudice. The action was tried to the court without a jury.

The plaintiff in its complaint alleges two separate counts. In the first count plaintiff seeks to recover the sum of $5,000 paid on account of the purchase price of real property under an earnest money agreement. In the second count recovery of the sum of $5,000 is sought based upon the common count of money had and received.

The defendants Holcombe and Mariner were real estate brokers, each engaged in his separate business

in Corvallis, Oregon. The defendants Jelen were the owners of six and one-half acres of land located in Benton county, Oregon, improved with a residence and outbuildings.

Gerald Strausheim was the managing agent for the plaintiff, a Nebraska corporation having as its stockholders the mother, brother and wife of Gerald Strausheim. The stockholders were also the officers of the corporation and constituted its board of directors.

The directors of the corporation planned to move a part of the corporation's operations to Oregon. Gerald Strausheim, its managing agent, came to Oregon on August 5, 1964, to purchase in the name of the corporation, a private residence for himself and his family. He was purchasing this in the name of the corporation because a claim of several hundred thousand dollars growing out of an oilfield accident was pending against him personally. Based on an advertisement in a local newspaper, Mr. Strausheim called Mr. Holcombe and inquired about the Jelen property. Defendant Holcombe testified that at the time of this telephone call he inquired as to the proposed means of financing the purchase and Mr. Strausheim advised him that this would be a cash deal. Mr. Strausheim testified that on the way to look at the property of the defendants Jelen, he advised Mr. Holcombe that he wanted a loan on the property by means of a deed and mortgage in the approximate amount of $25,000. This was contradicted by Holcombe, who testified that no mention was made of the necessity of financing any part of the purchase price until they returned to Holcombe's office that afternoon for the purpose of writing up the earnest money agreement. Holcombe testified that until that time he had considered this to be a cash deal. Using a printed form, they made out an

earnest money receipt which Mr. Strausheim signed. A check for $5,000 as earnest money deposit on the purchase price was also delivered to Mr. Holcombe. Mr. and Mrs. Jelen, the owners, subsequently accepted the offer and signed the earnest money agreement. The earnest money agreement in its material parts read as follows:

"Received from ANAHEIM COMPANY (a Nebraska Corp.) * * * (hereinafter called 'purchaser') the sum of Five Thousand and no/100ths Dollars ($5,000.00) * * * as earnest money and in part payment for the purchase of the following described real estate * * * which we have this day sold to said purchaser for the sum of Forty Thousand and no/100ths Dollars ($40,000.00) on the following terms, to-wit: The sum, hereinabove receipted for, of Five Thousand Dollars ($5,000.00) * * * Upon acceptance of title and delivery of a* (deed the sum of Ten Thou-
(contract
sand Dollars ($10,000.00); Balance of Twenty Five Thousand Dollars ($25,000.00) payable as follows: as arranged by lender, and borrower. This offer is contingent on obtaining a loan of $25,000 * * *.
"* * * * *

"Possession of said premises is to be delivered to purchaser on or before 30 days * * *."

After executing the earnest money receipt, Strausheim accompanied Holcombe to the Corvallis office of Equitable Savings & Loan Association where they talked with the manager of said association about the possibility of obtaining a $25,000 loan on the property of Mr. and Mrs. Jelen. Concerning his discussions with the manager of Equitable Savings & Loan Association, Strausheim testified:

"* * * He asked me if—at that time I thought that the corporation officers would sign the mort-

gage as individuals along with the corporation. I told him that I thought that probably they would. I didn't know why they wouldn't  *   *   *."

Gerald Strausheim returned to Nebraska that evening. The manager of the Equitable Savings & Loan Association mailed to Strausheim in Nebraska a financial statement form for execution by the corporation. This was filled out on behalf of the corporation and returned. The financial statement disclosed that the corporation had been organized for only a few months under the laws of Nebraska; had not secured authorization to do business in Oregon and had total net assets of only slightly more than $20,000. Although upon inspection the security was determined to be ample, Equitable Savings & Loan Association, because of the information disclosed by the financial statement, refused to make the requested loan without the signatures of the officers of the corporation in their personal capacity. The officers of the corporation refused to sign.

Mr. Strausheim in his testimony stated that, after learning that Equitable Savings & Loan Association would not make the loan, he personally made no further effort to secure financing in Oregon, but that he did talk to certain persons in Nebraska about a loan. No other application was actually made. Mr. Strausheim then demanded a return of the earnest money on deposit with Holcombe. Holcombe then contacted the defendants Jelen concerning their willingness to finance the sale by means of a land sales contract, which contract it was suggested by Holcombe be on terms identical to residential mortgage loans available in the Corvallis area through Equitable Savings & Loan Association as to the length of the loan, interest rate and payment schedule. The defendants Jelen were

agreeable to selling on contract on such terms, that is to say $15,000 down, the unpaid balance of $25,000 payable monthly over a period of 20 years with interest at 6¼ percent. These were precisely the same terms as those on which Equitable Savings & Loan Association was making loans on like property in the Corvallis area. Holcombe, at the direction of the defendants Jelen, proceeded to have an attorney draw up such a contract and sent the same to plaintiff for execution in duplicate. The plaintiff, through its agent, Strausheim, made telephone calls to Holcombe during this period of time. He testified that he told Holcombe in these phone calls that the corporation objected both to purchasing on contract and to the suggested interest rate; however, this is contradicted by Holcombe. Holcombe testified that at no time prior to the bringing of this litigation did the plaintiff raise an objection to this form of financing or insist that the same be on a note and mortgage, but merely objected to the interest rate provided in the contract. It is interesting to note in passing that early in October, 1964, Janet M. Strausheim, the wife of Gerald Strausheim, purchased directly from the owner thereof a home in the same vicinity, a home which defendant Holcombe had shown Gerald Strausheim on August 6, the date of the earnest money agreement. This home was purchased for the personal use of the Gerald Strausheim family.

The plaintiff contends that the earnest money receipt is too indefinite, vague and uncertain to create the relationship of vendor and purchaser and that for that reason the trial court erred in dismissing plaintiff's complaint.

The contract is in writing; it is signed by the party to be charged; it expresses the consideration; it adequately describes the subject property, and it indicates

the date on which the transaction is to be closed. This court has held that an earnest money agreement similar in terms to the earnest money agreement presently under consideration is sufficient to create the relationship of vendor and purchaser. *Aldrich v. Forbes,* 237 Or 559, 570, 385 P2d 618, 391 P2d 748 (1964). Clearly, the earnest money agreement under consideration would be binding and enforceable in the absence of the provision with reference to obtaining a loan. The disposition of this case turns on the phrase "This offer is contingent on obtaining a loan of $25,000."

■ When an earnest money agreement provides that payment of the balance of the purchase price is conditioned upon the securement of a loan, an implied condition is imposed upon the vendee to use reasonable diligence to procure the loan. With reference to a similar provision in an earnest money agreement, this court in *Aldrich v. Forbes,* supra, at page 570, held:

> "We interpret the language 'Subject to purchaser securing satisfactory Loan' as imposing an obligation to make a reasonable effort to secure a loan * * *."

See also *Reese v. Walker,* 6 Ohio Op2d 55, 77 Ohio L Abs 583, 151 NE2d 605 (1958); *Tieri et al v. Orbell,* 192 Pa Super 612, 162 A2d 248 (1960); *Congregation v. Kesmo Del.,* 82 Ohio App 282, 81 NE2d 543 (1948); *Stabile v. McCarthy,* 336 Mass 399, 145 NE2d 821 (1957); 1 Corbin, Contracts (3d ed 1963) 400, § 95.

■■ Whether reasonable efforts had been exercised by plaintiff to obtain a loan was a question for the trier of the facts. The plaintiff had the burden of proof on this issue. The trial court in a memorandum opinion made findings contrary to the contention of the plaintiff on this issue.

In *Sexton v. Kelly,* 185 Or 1, 12, 200 P2d 950 (1948) we held:

"It is not the function of this court in law actions to pass on the credibility of witnesses, to weigh the evidence, or to resolve the conflicting testimony. These are matters for the determination of the Circuit Court. It is, however, the province of this court, when properly presented, to decide whether there is substantial evidence to support the findings of the court or the verdict of the jury, as the case may be * * *."

Also see *Sweet et al v. Stewart Livestock Co. et al,* 231 Or 197, 372 P2d 499 (1962); *Gordon Creek Tree Farms v. Layne et al,* 230 Or 204, 358 P2d 1062, 368 P2d 737 (1962); *Burke Mchy. Co. v. Copenhagen,* 138 Or 314, 6 P2d 886 (1932).

■■ The finding of the trial court that the plaintiff failed to prove that it exercised reasonable efforts to obtain a loan cannot be set aside unless this court is of the opinion that the findings are not supported by any competent substantial evidence as distinguished from the task of weighing the evidence. We hold that the finding by the trial court is supported by competent substantial evidence.

Affirmed.