Argued June 1, modified and remanded September 27, 1973

PHILLIPS ET UX, *Respondents, v.* JOHNSON ET UX,
*Appellants.*

514 P2d 1337

*Robert C. Anderson,* Astoria, argued the cause for appellants. With him on the brief were Anderson, Fulton, Lavis & Van Thiel, Astoria.

*Jeanyse R. Snow,* Astoria, argued the cause for respondents. With her on the brief were Macdonald, Dean, McCallister & Snow and Robert C. Macdonald, Astoria.

Before O'Connell, Chief Justice, and Denecke, Holman,* Tongue, Howell and Bryson, Justices.

TONGUE, J.

This is a suit for specific performance of an "earnest money receipt" for the sale of land near

---

* Holman, J., did not participate in this decision.

Astoria. Defendants appeal from a decree by which the trial judge ordered the parties to "perform pursuant to a land sale contract as contemplated by the earnest money receipt," the terms of such "contract" being attached to that decree.

Defendants contend that: (1) the trial court erred in denying defendants' motion for a jury trial; (2) the legal description of the land was insufficient; (3) the trial court ignored testimony to the effect that the property was to be surveyed and "legal documents" prepared; (4) the terms of the earnest money receipt were indefinite and uncertain, and (5) the award of $1,950 as attorney fees was unreasonable and improper.

After some preliminary discussions with defendants, and after consulting their attorney, plaintiffs made a visit to defendants for the purpose of making an offer to purchase a portion of defendants' land. Plaintiffs had previously visited the Clatsop County Courthouse and had secured a small map of the area, including the two tracts involved. They also had obtained from their attorney a printed Stevens-Ness "Earnest Money Receipt," which had been partly filled out by him. The attorney had attached an incomplete description of the two tracts and advised plaintiffs to also attach to it the map and to outline on the map in red and blue pencil the boundaries of the two tracts to be purchased when the boundaries of such tracts were agreed upon with defendants.

Mr. Phillips and Mr. Johnson walked along the county road which ran north and south between the two tracts and discussed what portion of defendants' land on the west side of the road should be included in the transaction as the second tract to be sold and where the north boundary line of that tract should

run. The first tract, lying east of that road, presented no problem.

They then returned to Mr. Johnson's house, where Mr. Phillips proceeded to mark on the map in red and blue pencil the outline of the boundaries of the two tracts. The price of $2,500, and terms of payment were also agreed upon at that time and inserted in the "Earnest Money Receipt." By those terms $100 was to be paid as earnest money and $900 as an additional down payment, with the balance of $1,500 payable as follows: "$750.00 plus in. at 6% to be paid on or before July 30—1972 and $750.00 plus interest at 6% to be paid on or before July 30—1973 which will be final payment." There was also discussion about having a surveyor survey the two tracts and prepare a "legal description" and about having an attorney prepare the "final papers." There is a conflict in the testimony, however, as to some of the matters discussed by the parties at that time.

All the parties then signed the "Earnest Money Receipt" and also signed the attached map, on which the boundaries of the two tracts had been marked, as well as the attached description of the two tracts, the second of which being still incomplete. Plaintiffs delivered to defendants a check for $100 at that time and later delivered another check for $900. Both checks were then returned by defendants, who refused to complete the transaction. Plaintiffs then filed this lawsuit.

1. *The trial court did not err in denying defendants' request for a jury trial.*

Defendants contend that they were entitled to a jury trial on the issue whether "certain conditions

precedent" were to be met before the signed documents became effective and cite *Smith v. Cain,* 69 Or 479, 139 P 566 (1914), for the proposition that when title to real property is involved the parties are entitled to a trial by jury of such a question. Defendants also contend that even if the trial judge had discretion in this case whether or not to direct that such a question be submitted to a jury for decision, there was an abuse of any such discretion.

■■ It is well established, however, that suits in equity, including suits for specific performance of contracts, are ordinarily to be tried to a court without a jury and that the constitutional right to trial by jury does not apply to suits in equity. See *Sugarman v. Olsen,* 254 Or 385, 388, 459 P2d 545 (1969), and *Katchen v. Landy,* 382 US 323, 337, 86 S Ct 467, 15 L ed 2d 391 (1966).

■■ ORS 17.040 provides that an issue of fact in a suit in equity may be submitted to a jury. In such a case, however, this is a matter within the sound judicial discretion of the trial judge. Upon examining the record in this case we find nothing to show that the trial judge abused such discretion in this case.

2. *The description of the land to be conveyed was sufficient.*

It would serve no useful purpose to recite the conflicting testimony relating to conversations between the parties about the north boundary line of the second tract of land. For the purposes of this case it is sufficient to say that according to Mr. Phillips, he and Mr. Johnson discussed and agreed that the north line of that tract should terminate at the intersection of an existing county road and an abandoned county

road and that this was the agreed terminus of the line for that boundary, as drawn by him on the map attached to the "Earnest Money Receipt." Mr. Johnson, however, denied that the intersection of the two roads was agreed upon as the terminus of that line, but testified that it was agreed that it terminate at a certain cedar tree some distance farther to the south on the county road. He also contended that the drawing on the map did not clearly show that this line terminated at the point of intersection of the two roads, considering a curve in the existing county road, a question relating to the true location of the abandoned county road, and the small scale of that map.

Plaintiffs offered the testimony of a surveyor and a title insurance company employee to the effect that based upon the drawing of the lines on the map, together with county records showing the location of the existing county road and the abandoned county road, they could prepare a description for both tracts of land sufficiently definite to convey good title to such tracts. Defendants offered the testimony of the county surveyor to the contrary.[1]

■ It is well established in Oregon that a description of land is sufficiently definite and certain if it is

---

[1] At the conclusion of trial, however, defendants' attorney did not appear to contend that the description of the two tracts was legally insufficient, but instead contended that a survey was intended to be a condition precedent to a binding contract. Thus, in the course of argument, he stated: "Sure, you can draw a legal description as Warner Lesseg [plaintiffs' witness] testified * * *." He then argued, however, that "the survey was an important plan in this ball game" and that there was testimony that "both Mr. Phillips and Mr. Johnson, the both of them, would go out and meet with a surveyor" because it was intended that "You'd have to have a surveyor as a condition precedent" before any binding agreement was intended.

possible for a surveyor to ascertain from the description, "aided by extrinsic evidence," what property was intended to be conveyed. See *O'Hara v. Brace,* 258 Or 416, 422, 482 P2d 726 (1971), and cases cited therein. See also *Western Hills, Oregon, Ltd. v. Pfau,* 265 Or 137, 508 P2d 201, 206 (1973); *Gubser v. Town and Stoutenburg,* 202 Or 55, 73-75, 273 P2d 430 (1954); and *Gamet et al v. Coop et ux,* 182 Or 78, 86, 91, 185 P2d 670 (1947).

■ Although the problem presented by the description in this case is a difficult one, after reviewing the testimony, including that of plaintiffs' surveyor, we agree with the finding by the trial judge that the description was sufficiently definite and complete so as to satisfy the requirements of the foregoing rule.

Whether the making of a survey, as well as the preparation of formal legal documents, was intended to be conditions precedent to a binding legal obligation, presents a further question.

3. *The trial judge properly found that when the parties signed the earnest money agreement they intended to enter into an enforceable and integrated contract.*

Testimony was offered that when the "Earnest Money Receipt" was signed there was discussion of engaging a surveyor to prepare a legal description of the two tracts and of having an attorney then prepare the formal legal documents. Defendants contend that, as a result, the parties intended that these occurrences were to be conditions precedent to any legally binding contract. Defendants also testified to the understanding that the document signed by them was no more than

a "receipt" for the $100 earnest money. Plaintiffs testified to a contrary understanding.

Under this conflicting testimony a close question is presented. This is particularly true when, as in this case, the document involved is entitled "Earnest Money Receipt," instead of "Earnest Money Agreement," or "Earnest Money Receipt and Agreement," as such a document might more appropriately be entitled.

In *Caldwell v. Wells*, 228 Or 389, 365 P2d 505 (1961), also involving a Stevens-Ness "Earnest Money Receipt," we recognized (at 396) that:

> "It is common knowledge that such a writing purports only to seal the bargain in a rough form and that the parties do not normally include all of the refinements of the transaction in an earnest money agreement."

Nevertheless, this court has enforced earnest money agreements, where sufficiently definite in their terms, in a number of cases. See *Anaheim Co. v. Holcomb*, 246 Or 541, 547, 426 P2d 743 (1967); *Sternes v. Tucker*, 239 Or 105, 112-113, 395 P2d 881 (1964); *Aldrich v. Forbes*, 237 Or 559, 569, 385 P2d 618, 391 P2d 748 (1964); *Davis et al v. Dunigan et al*, 186 Or 147, 154, 205 P2d 839 (1949); and *Alpha Phi of Sigma Kappa v. Kincaid*, 180 Or 568, 178 P2d 156 (1947). See also *Higgins v. Insurance Co. of N. America*, 256 Or 151, 156, 469 P2d 766 (1970); and *Highway Commission v. Clark*, 238 Or 505, 395 P2d 146 (1964). Cf. *Meadowlark Inv. Corp. v. Croeni*, 237 Or 535, 392 P2d 327 (1964). But see Note 32 Or L Rev 267 (1953).

■ The question remains, however, whether, under the facts of this particular case, the contemplated arrangements for a survey to provide a legal description for use in the preparation of final documents by

an attorney were conditions precedent to a binding obligation after execution of the earnest money agreement. Because this question is one which depends upon the intent of the parties, it is ordinarily a question of fact, rather than one of law, at least where the evidence is conflicting, as in this case. 3 Corbin on Contracts 219, § 554 (1960).

In *Western Bank v. Morrill*, 245 Or 47, 420 P2d 119 (1966), although not involving an earnest money agreement, this court approved the following rule:

> "'* * * an agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed. If therefore it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed on, * * * this is an obligatory agreement, which dates from the making of the oral agreement and not from the date of the subsequent writing, * * *.' "

However, in *Wagner v. Rainier Mfg. Co.*, 230 Or 531, 540, 371 P2d 74, 78 (1962), although also not involving an "Earnest Money Receipt," this court stated the following rule, quoting from *Rosenfield v. United States Trust Co.*, 290 Mass 210, 216, 195 NE 323, 325, 122 ALR 1210 (1935):

> "'* * * Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. * * * Said fact does not conclusively establish such intention. * * * If all the material terms which are to be

incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms. * * *' ''

In this case the trial court made the following findings:

"Plaintiff has proven by a preponderance of the evidence that when the parties signed the earnest money receipt in question, that the same thereafter constituted an enforceable and integrated contract for the sale of land.

"The defendants failed to prove by a preponderance of the evidence the existence of any condition precedent to such contract."

██ We recognize that in a suit in equity we are not bound by such findings. Nevertheless, we have often said that in a suit in equity the findings of fact by a trial judge who has had an opportunity to observe the demeanor of the witnesses, as in this case, are entitled to great weight. After examining the entire record, including the testimony of all of the witnesses, we find no evidence of such a nature as to lead us to believe that the trial judge was in error in these findings. We hold that they are supported by a preponderance of the evidence.

The question remains, however, whether the terms of this earnest money agreement were sufficiently definite and certain so as to be enforceable in equity by specific performance.

4. *The earnest money ageement was indefinite in its provisions for future payments to be consummated by a land sale contract or by a deed and mortgage, but its provisions conferring an election to pur-*

*chase for cash were enforceable, upon condition that such an election be exercised.*

Defendants contend that the terms of the "Earnest Money Receipt" were indefinite and uncertain not only with reference to the description of the property to be sold, but also with reference to the manner in which the sale was to be completed. Thus, the form agreement provided, among other things, that $900 was to be paid "upon acceptance of title and delivery of * $\begin{cases} \text{deed} \\ \text{contract,} \end{cases}$ * * *", with the asterisk (*) referring to the following footnote: "Strike whichever phrase not applicable."

Neither the word "deed" nor the word "contract" was stricken. The testimony is also unclear whether the parties intended the transaction to be closed by a deed (or deed and mortgage) or by a land sale contract. Neither was there any testimony, much less any provision in the written agreement, relating to the nature and terms for foreclosure or other security provisions to be included in any such mortgage or land sale contract.

This court, in a long line of cases, has adhered to the rule that before there can be a valid contract there must be a meeting of the minds as to all of its terms; that nothing can be left for future negotiation, and that if any portion of the contract is not agreed upon, or if no method is agreed upon by which such a term or provision can be settled, there is no contract. *Friesen v. Fuiten,* 257 Or 221, 230, 478 P2d 372 (1970); *Western Bank v. Morrill,* 245 Or 47, 59, 420 P2d 119 (1966); *Landgraver v. DeShazer,* 239 Or 446, 448, 398 P2d 193 (1965); *Slayter v. Pasley,* 199 Or 616, 627, 264

P2d 444 (1953); *Claude v. Claude,* 191 Or 308, 337, 223 P2d 776, 230 P2d 211 (1950); *Gwaltney v. Pioneer Trust Co.,* 184 Or 459, 466, 199 P2d 250 (1948); *Reed et al v. Montgomery,* 180 Or 196, 219-21, 175 P2d 986 (1947); *Newport Construction Co. v. Porter,* 118 Or 127, 133, 246 P 211 (1926); and *Holtz v. Olds,* 84 Or 567, 577, 164 P 583, 164 P 1184 (1917).

■ Substantially this same rule has been applied in suits in equity for specific performance of contracts for the sale of land. Thus, in *Smith v. Vehrs,* 194 Or 492, 500, 242 P2d 586 (1952), this court stated the rule that equity will not specifically enforce such a contract unless it is complete and certain "in all its parts"; that "none must be left to be determined by future negotiations; and this is true without any regard to the comparative importance or unimportance of these several terms." To the same effect, see *Landgraver v. DeShazer, supra* at 448; *Pion. Cem. Assn v. Spencer Butte Lodge,* 228 Or 13, 45, 363 P2d 1083 (1961); *Bock v. Schott,* 189 Or 358, 360, 217 P2d 768 (1950); *Gwaltney v. Pioneer Trust Co., supra* at 466; *Ramsey v. Wellington Co.,* 114 Or 355, 370, 235 P 297 (1925); *Wagonblast v. Whitney,* 12 Or 83, 88, 6 P 399 (1885); and *Odell v. Morin,* 5 Or 96, 98 (1873).

It has been suggested that the foregoing rules apply only to "essential" contract provisions, and have no application to "mere details," at least in an action at law for damages for breach of contract, if not also in a suit in equity for specific performance. We need not, however, decide that question in this case.

■ In this case, as previously stated, there was no agreement between the parties whether the sale of this land was to be consummated by a deed (or by deed, note and mortgage) or by a land sale contract.

Neither was there any agreement upon the terms of provisions for foreclosure or other security provisions to be included in such a mortgage or land sale contract. We cannot say that such provisions were "unimportant" to the parties, under the rule of *Smith v. Vehrs*. Neither can we say that such provisions were not considered by the parties to be "essential provisions" or that they were "mere details," in the event that the rule of *Smith v. Vehrs* be considered to be subject to such a limitation.

It follows that this "Earnest Money Receipt" is not an enforceable contract in a court of equity by the remedy of specific performance insofar as it purports to bind the parties to the terms of a contract under which plaintiffs would be entitled to require defendants to accept installment payments over a period of time. Although, on occasion, earnest money agreements for the sale of land have been specifically enforced by this court, none of such cases involve facts, contentions and issues substantially similar to those involved in this case.

It does not follow, however, that a court of equity is without power to provide any remedy in such a case. It will be noted that under the terms of the "Earnest Money Receipt" the balance of $1,500 was payable in the following manner:

> "750.00 plus in. at 6% to be paid on *or before* July 30—1972 and $750.00 plus interest at 6% to be paid on *or before* July 30—1973 which will be final payment." (Emphasis added)

By these terms plaintiffs were given an election to pay the entire balance of $1,500 in cash and, in such an event, defendants were required to accept payment of that entire balance in cash. Also, in such an event, the failure of the parties to agree upon provisions in a

land sale contract or mortgage to insure future payments would become wholly irrelevant and superfluous. Indeed, there would then be no occasion for any land sale contract or mortgage, for the reason that upon making payment of the total purchase price plaintiffs would thereupon be entitled to receive a deed conveying good and sufficient title to the property, as defendants undertook to provide by the terms of the "Earnest Money Receipt."

Under quite similar facts the Washington Supreme Court, in *Hubbell v. Ward*, 40 Wash 2d 779, 246 P2d 468 (1952), after holding (at 472-73) that the terms of the "earnest money receipt" involved in that case were "not sufficiently definite and certain and cannot be specifically enforced" went on to hold (at 473) as follows:

> "* * * Jurisdiction having attached, it extends to the whole controversy, and whatever relief the facts warrant will be granted. [Citing cases].
>
> "Equity having taken jurisdiction of the controversy, we are of the opinion that respondents are entitled to a decree of specific performance directing appellant to execute and deliver a deed and bill of sale conditioned upon respondents' tendering payment of the balance of the full contract price of $29,000 within a reasonable period of time.
>
> "* * * A decree permitting respondents to exercise their option to pay in full will afford them a reasonable opportunity to obtain the benefits of the bargain to which they are entitled and, at the same time, will compel appellant to accept the accelerated payments to which he has agreed. See Restatement, Contracts, 683, § 370, comments and illustrations thereunder."

In 5A Corbin on Contracts 281-82, § 1174 (1964), the case of *Hubbell v. Ward* is cited for the proposition

that "\* \* \* of two alternative performances one may be specifically enforceable \* \* \*." Similarly, in 11 Williston on Contracts (3d ed 1968) 814, § 1424, n. 7, it is stated that "Where defendant had \* \* \* a choice of performances, the court may order him to select and perform," citing *Williams v. Cow Gulch Oil Co.*, 270 F 9 (8th Cir 1921), noted 35 Harv L Rev 345 (1921).

After then recognizing that uncertainty in the terms of payment is generally held to be a defect in an essential provision, Williston goes on to state as follows (at 817-18):

"And where the uncertainty is not so great as to prevent the existence of a contract, it is submitted that specific performance should be decreed in spite of uncertainty in terms upon tender of full payment in cash and this is clearly the growing trend readily discernible in the better-reasoned decisions.

"\* \* \* \* \*

"In cases where specific performance of only part of an agreement is in question, it should also be observed that such uncertainty in another portion of the contract as would preclude specific performance of the latter portion will not destroy the plaintiff's claim for specific performance of the former part, if partial enforcement is otherwise allowable."

After considering the entire record in this case and all of the many problems involved, we believe, for these same reasons, that the entry of such a decree, conditioned upon the immediate payment by plaintiffs of the purchase price in full and in cash, is appropriate in this case. Indeed, it has been truly observed that apparent difficulties arising out of uncertainties of expression often disappear in the light of common sense. We also believe, however, that it is more appro-

priate that the trial court prepare the detailed terms of such a decree in a manner best suited to the particular facts of this case, than for this court to consider and decide all of the detailed provisions of such a decree, as was done in *Hubbell v. Ward, supra.*

It follows that the decree as entered by the trial court and which would have granted specific performance of a land sale contract, including provisions for future payment of the purchase price, must be set aside and replaced by such a decree, to be conditioned upon payment of the purchase price in full and in cash.

5. *The award of attorney fees by the trial court was not shown to be improper.*

Finally, defendants object to the award to plaintiffs by the trial court of $1,950 in attorney fees, upon the ground that "there is no record of the sworn testimony relevant to attorneys' fees"; that "apparently, the court heard expert witnesses but no record was made, and therefore it is impossible to know the basis of the award," that $1,950 is an excessive fee for "a trial that was less than 10 hours," and that the trial court "in no way considered the value of the realty involved, nor the legal complexities of the case itself."

At the beginning of the trial it was stipulated that plaintiffs' request for an award of attorney fees would "be determined by appropriate evidence * * * after the conclusion of the regular testimony * * *," including "evidence of his legal work * * *."

The only record relating to this matter is that on September 17, 1971, some two months after the trial and apparently after the decision by the trial judge on the merits of the case, a further hearing was held on

the matter of attorney fees. At the beginning of that hearing plaintiffs' attorney stated on the record that "defendants' attorney has previously indicated to me this morning that he did not intend to appear. He said we could proceed in his absence * * *." According to the record, "[t]he foregoing hearing continued on with testimony being given relative to attorneys fees, the reporting of the same being waived by Mr. McDonald [plaintiffs' attorney]."

Defendant cites *Chalmers v. Oregon Auto. Ins. Co.*, 263 Or 449, 502 P2d 1378 (1972), in which this court reviewed the various factors to be considered for the purpose of determining what is a reasonable attorney fee. Defendants say that "the same consideration should be made in the trial court."

On this record, however, and after defendants' attorney had chosen not to attend that hearing and made no arrangements for the reporting of evidence offered at that hearing, we see no basis upon which we can determine whether or not the trial judge gave proper consideration to these various factors. In the absence of a transcript of the testimony as offered at that hearing we must presume that he did so. Cf. *Beelman v. Beelman,* 227 Or 556, 558, 361 P2d 663, 363 P2d 561 (1961).

For all of these reasons we remand this case to the trial court for further proceedings not inconsistent with this opinion.

Modified and remanded.