Submitted on briefs February 17, reversed March 7, 1978

WHEELER et ux, *Appellants,*
*v.*
McNETT, *Respondent.*
(TC 75-846-L, SC 25323)
575 P2d 649

Gordon Wheeler, Pro se, filed a brief for appellants.

No appearance contra.

TONGUE, J.

.

**TONGUE, J.**

In an action for damages for trespass an oral stipulation was made at the time of trial for settlement of the case, consisting of a 12-page colloquy between the parties and their attorneys in which various terms of settlement were discussed. At that time it was agreed that a written stipulation would be "entered into and signed by the parties and their attorneys and an order entered confirming the stipulation and dismissing the action."

Apparently no such written stipulation was ever "entered into and signed." One year later defendant's attorney submitted to the court a "Judgment Per Stipulation," by the terms of which that oral "stipulation" was "confirmed" and the 12-page "transcript of said stipulation" was "incorporated into this order." The court "further ordered" not only that "the parties comply with said stipulation," but that "Plaintiffs execute an easement in favor of the Defendant for the relocated easement" and that if plaintiffs failed to do so "Defendants may submit said easement for the signature of the Court." Plaintiffs appeal from this judgment. We reverse.

Upon examination of the 12-page "stipulation," we find that it was not limited to the execution by plaintiffs of an easement to defendant along a route marked upon a map which was marked as an exhibit but not attached to the transcript so as to be part of the judgment. There was also discussion of various other matters, including the maintenance of a road along the easement. According to the transcript, defendant was to be responsible for maintenance of the "upper part of the road," but the cost of maintenance of "the part of the road used by both parties * * * down to east of the dam," was to be "shared equally," as distinguished from "the part of the road used largely by one party or the other." In a later discussion, it was agreed that "said roadway shall be maintained upon a mutual basis, the cost of [which] shall be borne in the

proportion to the usage by each party," but that "any damages caused by either party to the improvements constructed by either party on the easement herein created shall be repaired by the party causing such damage."

Also discussed was the obligation of defendant to restore to its "normal channel" water which had apparently been diverted through a culvert, including the installation of a board or plank wall "down by that tree" and the filling of a "hole," to be topped "on the surface" with "good heavy topsoil" of a kind "that will stay without drifting away and will grow canary grass." Another item discussed was defendant's obligation to put gravel on "a sufficient amount of the fill so that Mr. Wheeler can make that turn in there to his woodyard," to a width of 24 feet and for a distance of 50 feet "from approximately 12 feet on the other side of this property line" to the "edge of [plaintiffs'] existing road," as shown by "shaded area" on the map marked as an exhibit (but not attached to the judgment), although that shaded area was said to be "considerably wider than it would be."

During the discussion of these and other matters of agreement it was stated that "Mr. Wheeler will sign an easement with a new description to Mr. and Mrs. McNett"; that both parties would sign mutual releases; that a proposed easement prepared by defendant's attorney (which was offered as an exhibit, but was not attached to the decree and which covered some, but not all of the foregoing matters) would be used and "the only thing that will change would be the description." At the end of the discussion it was also agreed, as previously stated, that "[w]e will have stipulation entered into and signed by the parties and their attorneys and an order entered confirming the stipulation and dismissing the action."

■■ We recognize that the settlement of litigation by compromise agreement between the parties is to be encouraged and that stipulations for settlement

should ordinarily be enforced by the courts. *See Davis v. Brown,* 280 Or 561, 571 P2d 912 (1977). In that case, however, it was noted by this court (at 565) that the parties had "agreed on terms that allow specific enforcement of that stipulated contract."

In this case, however, based upon our examination of the 12-page colloquy between the parties and their attorneys, including their statement that the oral "stipulation" be reduced to writing in the form of a written stipulation "to be entered into and signed," we seriously doubt whether the parties intended that the agreement be binding until that written stipulation was "entered into and signed" by both parties. *Cf. Wagner v. Rainier Mfg. Co.,* 230 Or 531, 539-40, 371 P2d 74 (1962), and *Western Bank v. Morrill,* 245 Or 47, 59, 420 P2d 119 (1966). *See also* Corbin on Contracts 97-99, § 30 (1963).

In any event, during the course of that 12-page colloquy between the parties and their attorneys, we find a number of ambiguities and inconsistencies. It may be that this 12-page oral "stipulation" was understandable to the parties and their attorneys. We hold, however, that its terms were not sufficiently definite and certain so as to be properly subject to enforcement by specific performance by a judgment which attached the 12-page transcript and ordered that "the parties comply with the said stipulation." *Cf. Phillips v. Johnson,* 266 Or 544, 556, 514 P2d 1337 (1973), and cases cited therein.

It follows that the judgment of the trial court must be reversed.