Argued and submitted January 30,
affirmed March 17, reconsideration denied May 15,
petition for review denied September 3, 1980 (289 Or 587)

# SHIPLER LOGGING COMPANY,
*Appellant,*
*v.*
# PONDEROSA INVESTMENT COMPANY, et al,
*Respondents,*
# DEE FOUNTAIN REALTY, INC., et al,
*Defendants.*

## (No. 77-2881, CA 12066)

608 P2d 211

H. William Barlow, Salem, argued the cause for appellant. With him on the brief was Allen, Stortz, Barlow, Fox & Susee, Salem.

Steve P. Chez, Eugene, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

The plaintiff's second amended complaint sought the recovery of general and punitive damages from all of the defendants for the alleged wrongful conversion of the plaintiff's check into cash. All defendants were granted a judgment of involuntary nonsuit. The plaintiff has appealed only as to defendants Ponderosa Investment Company (Ponderosa), Donald F. Bach and John S. Green. We affirm.

In October 1976, Ponderosa agreed to purchase the "land and improvements located at 3020 E 40th, Eugene, Oregon and known as the Ricker residence also located in Lane County Tax records as 18-03-10-1200." The sellers were Roy Ricker and Mary Louise Ricker. The parties executed a standard form earnest money receipt with an addendum. Donald F. Bach was the secretary-treasurer and John S. Green was the president of Ponderosa. The sale was negotiated by defendant William Allard, a salesman for defendant Dee Fountain Realty, Inc.

The property contained approximately 43 acres with from 400,000 to 500,000 feet of merchantable timber. Ponderosa planned to subdivide the land into five-acre tracts and wanted to have the timber sold and logged prior to the subdividing. Ponderosa employed Allard to find a buyer for the timber. Allard negotiated a sale of the timber to the plaintiff. It was agreed that the plaintiff would buy the timber at the rate of $140 per thousand board feet with a down payment of $15,000.

On November 2, 1976, plaintiff delivered to Allard the following letter:

"Inclosed is our check for $15,000, together with the agreement with Ponderosa Investment Co. Eugene, Oregon to purchase timber on tax lot 1200—18—3—10. You may deliver above when they can *legally sell and accept payment.* * * * " (Emphasis added)

[327]

On the same date Allard delivered the letter and check to Ponderosa. Both Bach and Green read the letter and caused the check to be deposited to the account of Ponderosa. Allard was then given Ponderosa's check in the amount of $2,500 as a commission.

The plaintiff was unable to start logging immediately because it had difficulty in finding a logging contractor and because Ponderosa was having the property surveyed. Later the plaintiff learned that it would not be allowed to log the timber. The Rickers told one of the plaintiff's employees "this deal fell apart . . ." After negotiations with the defendants to obtain the timber or the return of the down payment failed, the plaintiff filed its complaint praying for $15,000 general damages plus interest and $10,000 punitive damages.

The plaintiff moved for a summary judgment. The defendants Ponderosa and Bach countermoved for a partial summary judgment requesting "that a judgment be entered in favor of plaintiff against defendant Ponderosa for $15,000 with interest from November 2, 1976." The defendants' motion for summary judgment was granted. The judgment was paid to the plaintiff. The case went to trial on the sole issue of punitive damages. [1]

At the conclusion of the plaintiff's case the trial court granted defendants' motion for an involuntary nonsuit. The plaintiff has assigned that order as to Ponderosa, Bach and Green as error.

It is the plaintiff's position that the $15,000 check was delivered to Ponderosa on the condition that it

---

[1] We are aware of the rule that punitive damages alone cannot constitute the basis for a cause of action. *Belleville v. Davis,* 262 Or 387, 498 P2d 744 (1972). As the judgment for general damages was entered against Ponderosa only, it would appear that further proceedings against the other defendants for punitive damages only would be questionable. The defendants did not raise this question in either the trial court or this court.

could "legally sell (the timber) and accept payment" and that Ponderosa's only claim to the timber was through the earnest money receipt which required further negotiation. The last clause of the addendum to the Ricker-Ponderosa earnest money receipt reads:

"This offer also subject to a mutually agreeable contract between the seller and purchaser."

The plaintiff concludes that Ponderosa did not have a legal right to sell the timber and, therefore, wrongfully converted the check into cash. On the other hand, the defendants contend that the earnest money receipt and the addendum constitute a "valid and enforceable" contract and that the "mutually agreeable contract" to be executed by the parties would be a mere memorial of their prior agreement.

The construction of a contract is a question of law for the court. *Quillin v. Peloquin,* 237 Or 343, 346, 391 P2d 603 (1964). The essential terms of a contract to sell real property are:

"(1) the parties; (2) the subject matter; (3) the mutual promises; and (4) the price and consideration and terms of payment if the sale is not for cash." M. Friedman, Contracts and Conveyances of Real Property 69 (3d ed 1975).

The earnest money receipt and the addendum of October 5, 1976, between the Rickers and Ponderosa contained the following terms: description of subject matter by street address and designation by a certain account number in the tax records of Lane County (no party has questioned the description); the promise of the Rickers to sell and the promise of Ponderosa to buy the property; and the sale price, $125,000, with the sum of $25,000 paid down, and the balance to be paid in annual installments. [2]

---

[2] The down payment of $25,000 was the total of a $5,000 note payable on closing and cash in the sum of $20,000 to be paid upon acceptance of title and delivery of a contract. The balance of $100,000 was to be paid in installments of $9,500 "per year principle [sic] and interest at 9% and first payment due on 30 July, 1977 and all due and payable on 1 August 1992."

The Rickers and Ponderosa contemplated that the timber would be sold to a third party. The addendum to the earnest money receipt provided:

"Purchaser to pay seller 25% of the proceeds of any timber sold. Price to be established by mill receipts and the monies to be applied directly to the principle [sic] and to be paid within 30 days after sale and delivery of the timber to the mill."

We hold that the earnest money receipt and the addendum contained the essential terms of a contract to sell real property.

In support of its contention that the Ricker-Ponderosa earnest money receipt and addendum constituted a preliminary agreement which required further negotiation, the plaintiff has cited *Higgins v. Bonnett,* 282 Or 725, 580 P2d 180 (1978), which refers to *Phillips v. Johnson,* 266 Or 544, at page 552, 514 P2d 1337, at page 1341, (1973), wherein the court said:

"In *Caldwell v. Wells,* 228 Or 389, 365 P2d 505 (1961), also involving a Stevens-Ness 'Earnest Money Receipt,' we recognized (at 396) that:

" 'It is common knowledge that such a writing purports only to seal the bargain in a rough form and that the parties do not normally include all of the refinements of the transaction in an earnest money agreement.'

"Nevertheless, this court has enforced earnest money agreements, where sufficiently definite in their terms, in a number of cases. See *Anaheim Co. v. Holcomb,* 246 Or 541, 547, 426 P2d 743 (1967); *Sternes v. Tucker,* 239 Or 105, 112-113, 395 P2d 881 (1964); *Aldrich v. Forbes,* 237 Or 559, 569, 385 P2d 618, 391 P2d 748 (1964); *Davis et al v. Dunigan et al,* 186 Or 147, 154, 205 P2d 839 (1949); and *Alpha Phi of Sigma Kappa v. Kincaid,* 180 Or 568, 178 P2d 156 (1947). See also *Higgins v. Insurance Co. of N. America,* 256 Or 151, 156, 469 P2d 766 (1970); and *Highway Commission v. Clark,* 238 Or 505, 395 P2d 146 (1964). Cf. *Meadowlark Inv. Corp. v. Croeni,* 237 Or 535, 392 P2d 327 (1964). But see Note 32 Or L Rev 267 (1953)."

[330]

At pages 553-54, 514 P2d at page 1342:

"In *Western Bank v. Morrill,* 245 Or 47, 420 P2d 119 (1966), although not involving an earnest money agreement, this court approved the following rule:

" ' " * * * an agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed. If therefore it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed on, * * * this is an obligatory agreement, which dates from the making of the oral agreement and not from the date of the subsequent writing, * * *." '

"However, in *Wagner v. Rainier Mfg. Co.,* 230 Or 531, 540, 371 P2d 74, 78 (1962), although also not involving an 'Earnest Money Receipt,' this court stated the following rule, quoting from *Rosenfield v. United States Trust Co.,* 290 Mass 210, 216, 195 NE 323, 325, 122 ALR 1210 (1935):

" ' "* * * Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. * * * Said fact does not conclusively establish such intention. * * * If all the material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms. * * *" ' "

The earnest money receipt executed by the Rickers and Ponderosa was also on a Stevens-Ness form. In addition to the essential elements of a contract recited above, the earnest money receipt and the addendum contained the following terms or provisions: taxes and insurance to be kept current; possession date; prorate of taxes and insurance; legal and tax plot attached;

[331]

title insurance; personal property to be left on premises; escrow; assignment of purchaser's rights; attorney fees; payment for survey; no landlock of any parcel by subdivision; septic and water service permits; separate out house and eight-acre tract; acceptance of survey; subordinate sellers' interest to loans; and cooperation on subdivision.

In *Higgins v. Bonnett, supra,* the addendum to the earnest money receipt stated: "Buyer will execute land sales contract in the form as prepared and approved by seller's attorney in favor of seller * * *." The addendum went on to provide that if the buyer failed to approve or reject the land sales contract within 30 days, the earnest money would be forfeited. The court held "it is clear that the parties did not intend the earnest money agreement to constitute the completed agreement." 282 Or at 728, 580 P2d at 182.

By way of contrast the Ricker-Ponderosa addendum provided: "This offer also subject to a mutually agreeable contract between the seller and purchaser. The above stated terms are hereby agreeable to both parties upon signature below." Both the earnest money receipt and the addendum were signed by both parties. The addendum may have been "an offer" when signed by the seller, but it became a contract when signed by the purchaser.

We hold that all the material terms which would have been incorporated into a "mutually agreeable contract" had been agreed upon between the Rickers and Ponderosa. Therefore, under the rule of *Wagner v. Rainier Mfg. Co., supra,* the writing to be drafted would be a "mere memorial" of the contract which was already final by the previous mutual assent of the parties to those terms.

Ponderosa could "legally sell" the timber and "accept payment" for it. It follows that there was no conversion.[3]

---

[3] The defendant Bach testified that Ponderosa had considered filing a suit for specific performance against the Rickers, but even if Ponderosa

The trial court did not err in granting the involuntary nonsuit.

Affirmed.

**THORNTON, J., dissenting.**

Contrary to the majority, I believe that the issue of punitive damages should have been allowed to go to the jury and that the trial court erred in allowing defendants' motion for an involuntary nonsuit. My reasons are as follows:

The record establishes that Ponderosa did not have a specifically enforceable contract to purchase the timber it purported to sell to plaintiff Shipler Logging Company. This agreement expressly provided, "This offer also subject to a mutually agreeable contract between the seller and purchaser."

Bach was actually attempting to renegotiate the agreement at the time of the purported sale to Shipler. Ponderosa was never able to arrive at an agreeable contract with the owners of the subject timber, nor were they ever able to convey the timber. Obviously, the terms of this contract were still open and were subject to mutual agreement at a future time. Thus, it could not in my opinion have been specifically enforced. *See Fleck v. Steinbeck,* 44 Or App 161, 605 P2d 717 (1980) (and numerous Oregon decisions cited therein), where this court refused specific enforcement of a similar agreement to purchase an apartment complex. Notwithstanding, Ponderosa took Shipler's $15,000 and converted it to its own purposes.

In *Higgins v. Bonnett,* 282 Or 725, 580 P2d 180 (1978), the earnest money agreement in issue provided

were successful it could not have delivered the timber to the plaintiff for a period of twelve to eighteen months, depending upon the duration of the litigation. It was Bach's opinion that the delay would not be acceptable to the plaintiff.

for a subsequent complete contract to be drawn and contained all of the terms the majority asserts are necessary to make an agreement specifically enforceable—names of parties, mutual promises, property to be conveyed and terms of payment. Our Supreme Court, however, denied specific performance on the ground that other evidence indicated the parties had not intended the contract to be a final agreement. 282 Or at 728. I disagree with the majority's conclusion that the signed agreement here was intended to be a final expression of the deal between Ponderosa and the Rickers.

If the agreement involved in the case at bar was not specifically enforceable by Ponderosa, it had nothing concrete to sell to Shipler. The conduct of all the defendants, as shown by this record, presented a jury question on the issue of punitive damages. *Mustola v. Toddy,* 253 Or 658, 456 P2d 1004 (1969).

For the above reasons, I respectfully dissent.