Argued October 8; reversed and remanded October 24, 1947

# GAMET ET AL. *v.* COOP ET UX.
### 185 P. (2d) 670

 

*Francis F. Yunker,* of Portland, for appellants.

*Gordon A. Ramstead* (with William Huey, both of Eugene, on brief), for respondents.

Before ROSSMAN, Chief Justice, and LUSK, KELLY, BAILEY and HAY, Justices.

KELLY, J.

This is a suit for specific performance instituted by the vendees, as plaintiffs, to enforce the provisions of an option, a copy of which is as follows:

> "Know all Men by These Presents, That Z. A. Coop and Grace N. Coop, his wife, of Cottage Grove, Oregon, the parties of the first part, for and in consideration of the sum of Fifty and No/100 ($50.00) Dollars to them in hand paid do hereby bargain, give and grant to David M. Gamet, Jr., Charles T. Gamet, and Lyle Gamet, the parties of the second part, for the period of Sixty (60) days from date hereof the sole, exclusive and irrevocable right and privilege of purchasing a certain tract and parcel of land situate and lying and being in the City of

Cottage Grove, County of Lane, State of Oregon, and more particularly described and bounded as follows:

The North 58 feet of Lot 1, Block 4 Georgetown's Second Addition to Cottage Grove, Lane County, State of Oregon.

and in the event the pattern shop overlaps the South portion of said premises the line shall be drawn so as to exclude the pattern shop, line to be established by survey and expense of survey to be borne 50/50 by the parties hereto; at and for the agreed price of Three Thousand and No/100 ($3,000.00) Dollars to be paid if the said parties of the second part shall elect to purchase hereunder in the manner and form as follows, to-wit: Two Hundred Fifty and No/100 ($250.00) Dollars at the time of exercise of said option and the remainder thereof, to-wit: Twenty-seven Hundred and No/100 ($2,700.00) Dollars to be evidenced by a promissory note dated as of date of exercise of option payable at rate of Six Hundred and No/100 ($600.00) Dollars per year plus interest thereon on deferred payments from said date at the rate of Six Percent (6%) per annum payable annually with the privilege of paying on or before; and in case the said parties of the second part shall elect to purchase said premises hereunder, and shall pay or offer to pay said consideration to said parties of the first part in time and manner and form as hereinbefore specified and to execute the aforesaid note and said note to be secured with a first mortgage on the aforesaid premises, then the said parties of the first part upon their part agree forthwith to convey said premises free of all encumbrances up to and including taxes due and payable for the period ending June 30, 1946, to the said parties of the second part by a good and sufficient Warranty Deed and to furnish therefor Title Insurance in the amount of Three Thousand and No/100 ($3,000.00) Dollars showing said premises free and clear of all encumbrances and a merchantable title subject to the usual printed exceptions.

In case of the exercise of said option the parties of the first part agree to convey to the parties of the second part the perpetual right to use One (1) Standard Leg Elevator Shaft, and the same to be maintained and kept in repair at the expense of the second parties; but in case the said parties of the second part shall not within Sixty (60) days from date thereof elect to purchase said premises as aforesaid then this agreement shall at the expiration of said Sixty (60) days become at once null and void and the said parties of the first part may and shall retain to their own use and benefit all money before that time paid hereunder.

Dated this 16th day of January, 1946.

Zeona A. Coop (Seal)
Grace N. Coop (Seal)''

The learned trial judge rendered a decree in favor of plaintiffs. The defendants have appealed. As a basis for their appeal, defendants urge three assignments of error, namely:

First Assignment of Error.

In holding that the agreement is one that could be specifically enforced in equity, the court erred because the agreement is vague, uncertain and ambiguous in three particulars, viz:

(1) That the southern boundary line of the real property involved is not shown, but depends upon whether the north 58 feet of lot 1 in the block and addition mentioned is overlapped by vendor's pattern shop; and this boundary line could be determined only by a survey, which has not been made.

(2) That the use of an elevator shaft is included in the subject matter of the proposed grant and its location is not shown.

(3) That the consideration for the option was the

payment of $50.00, and the consideration for the purchase, in case plaintiffs should exercise their option to purchase, was $3,000.00, but the prescribed installments of the purchase price to be paid plaintiffs aggregate only $2,950.00.

Second Assignment of Error.

That the provision for a survey to determine whether the defendants' pattern shop overlaps the 58 feet of said lot constituted a condition precedent to plaintiff's right to purchase and that such survey has not been made.

Third Assignment of Error.

That the court erred in decreeing specific performance, because the option agreement was obtained by the plaintiffs upon fraudulent representations to the effect that plaintiffs, who are brothers, had obtained permission of their stepmother, who was the administratrix of their father's estate, to buy the property.

The administratrix is the widow of plaintiffs' father, now deceased, and by reason thereof is the owner of one-half of the personal property of his estate. Such personal property consists in part of the machinery and other equipment in the machine shop upon the property in suit and the market price thereof could, and doubtless would, be materially affected by removing it for storage, which removal, in the absence of some agreement to the contrary, could be compelled by the owners of the building upon the premises in suit.

We are unable to concur in defendants' argument upon their three assignments of error or any of them.

In construing the option agreement in suit we are governed by the statutory rules:

"For the proper construction of an instrument,

the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." Section 2-218, O. C. L. A., Vol. 1, p. 233.

" * * * in the construction of an instrument the intention of the parties, is to be pursued, if possible; * * * " Excerpt from Section 2-217, O. C. L. A. Vol. 1, p. 227.

Thus guided, we find that, when this contract was executed, defendants were the owners of lot 1 in said block 4 and of the northerly half of lots 6, 7 and 8 in said block; that upon the northerly portion of lot 1 there was a building used as a machine shop. This machine shop had been operated by plaintiff's father. The plaintiffs were familiar with the building and the operation conducted therein. Soon after their father's death, which occurred on December 8, 1945, plaintiffs discussed with the defendant Mr. Coop, the matter of plaintiffs continuing the operation of the machine shop. For that purpose, plaintiffs secured from defendants the option in suit.

According to the testimony of Mr. Coop, the building on the premises in suit extended from the north boundary of lot 1 in said block 4 southerly a distance of 50 feet; that immediately south of that building was a passageway, termed an alley, 10 feet in width, and immediately south of that was another building used by defendants as a pattern shop. This pattern shop extended southerly 30 feet. Immediately south of the pattern shop, there was another open space 10 feet in width and immediately south of that open space there was another building extending southerly 48 feet and used by defendants as a foundry. We conclude

that the length of the Twelfth Street boundary line of lot 1 and of the northerly half of the lot immediately south of lot 1 was 150 feet; but whatever its length may be, there is no indefiniteness, uncertainty, vagueness, nor ambiguity about the provision in the option contract that the northerly 58 feet would be transferred by defendants to plaintiffs, if, within 60 days from the execution of the option, plaintiffs complied with the terms of the option in reference to paying the first installment of the purchase price and securing the payment of the remainder of the purchase price by mortgage. The defendants, however, in such case not only were obligated to convey the premises in suit by warranty deed to plaintiffs, but were also required to furnish title insurance thereupon which necessarily required a survey to be made to determine whether the pattern shop overlapped the northerly 58 feet of said lot 1. This requirement rested wholly upon defendants subject only to the provision that after the survey was made plaintiffs would bear one-half of the expense thereof, and, if an overlapping was shown, the portion of the premises in suit so overlapped would be excluded from the deed transferring the property to plaintiffs.

The taking of an inventory of a stock of merchandise to ascertain its quantity and value is analogous to the making of a survey of real property to ascertain its exact location and extent. In a recent case this court, speaking through Mr. Justice Hay, has held that, although there is no express provision to that effect in the contract of sale for a mercantile establishment, the duty of taking an inventory rests upon the vendor. *Champion et ux v. Hammer et ux*, 178 Or. 595, 169 P. (2d) 119.

■ Construing the contract in suit "by its four corners", we hold that it provides for the payment of $3,000 as the consideration for the property, if the plaintiffs should seasonably exercise their option to buy, $50.00 of which was paid when the option contract was executed; and that the remainder of the three thousand dollars, that is, two thousand nine hundred and fifty dollars was to be paid in prescribed installments to be secured by mortgage; and that, if plaintiffs did not exercise their option by purchasing the property, then plaintiffs would thereby forfeit the fifty dollars paid when the option was executed. We think that there is no ambiguity or uncertainty in the option in respect to the total amount to be paid by plaintiff if they so exercised their option.

■ It appears from the evidence that the elevator mentioned in the option contract was erected between the machine shop and the pattern shop and was used by those operating both of those shops. In the light of this evidence, to the introduction of which no objection was made, we find no uncertainty, vagueness, or indefiniteness as to the location of the elevator.

■ As to the possible overlapping of the pattern shop upon the northerly 58 feet of said lot 1, the contract in suit expressly provides a method by which that matter could be made absolutely certain. "That is certain which may be made certain," is a well known maxim, and, when applied to the contract in suit, dissipates any uncertainty as to the southerly line of the premises to be conveyed by defendants to plaintiffs.

"The fact that some of the terms of a contract are left to future determination does not preclude specific performance of the contract upon the ground of indefiniteness or uncertainty, where the

contract itself provides the method or means by which such uncertain terms may be made certain." Excerpt from Section 24, subject, Specific Performance, Vol. 49, Am. Jur., p. 37, citing in note 15:

*Joy v. St. Louis,* 138 U. S. 1, 34 L. Ed. 843, 11 S. Ct. 243; *Hayes v. O'Brien,* 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555; *Arnot v. Alexander,* 44 Mo. 25, 100 Am. Dec. 252; *Livingston Waterworks v. Livingston,* 53 Mont. 1, 162 P. 381, L. R. A., 1917D 1074; *Driebe v. Ft. Penn. Realty Co.,* 331 Pa. 314, 200 A. 62, 117 A. L. R. 1091.

See *Reeder v. Reeder,* 68 Or. 163, 135 P. 176, wherein this court, speaking through the late Mr. Justice HENRY J. BEAN, held the description to be sufficiently certain when from it the property could be identified by a competent surveyor.

Also see *Hamilton v. Rudeen,* 112 Or. 268, 224 P. 92; *McMaster v. Ruby,* 80 Or. 476, 485, 157 P. 782; *Corvallis & Eastern R. Co. v. Benson,* 61 Or. 359, 380, 121 P. 418; *Burns v. Witter,* 56 Or. 368, 108 P. 129; *St. Dennis v. Harras,* 55 Or. 379, 384, 105 P. 246, 106 P. 789; *Flegel v. Dowling,* 54 Or. 40, 102 P. 178; *Bogard v. Barhan,* 52 Or. 121, 96 P. 673; *Bingham v. Honeyman,* 32 Or. 129, 51 P. 735, 52 P. 755; and *House v. Jackson,* 24 Or. 89, 32 P. 1027, wherein this court, speaking through the late Mr. Justice MOORE, said:

"The rule for determining the sufficiency of a description in a deed, or any other writing in relation to real property, is as follows: Can a surveyor, with the deed or other instrument before him, locate the land and establish the boundaries?"

■ What we have said in discussing defendants' first assignment of error, disposes of defendants' second assignment, for there we have said that the duty of having the survey made rests upon defendants and not upon plaintiffs.

■ As to the third assignment of error, we think that there is no merit in it. As we understand the testimony, plaintiffs decided to try to secure, not only the building and the ground appurtenant thereto, but also the machinery in the building, in order to continue the operation of the machine shop which their father had operated. To this end, they discussed the matter of their proposed purchase with defendant Mr. Coop and Mrs. Jessie Gamet, their stepmother, who was the administratrix of their father's estate and owner of one-half interest in the machinery.

From the testimony of Mrs. Gamet, it appears that plaintiffs have agreed with her upon the purchase price of the machinery and have paid $100 thereon. In the light of this state of the record, we think that the learned trial judge committed no error in holding that no fraud had been proved by defendants.

The case of *Alexander v. Alexander*, 154 Or. 317, 58 P. 2d 1265, cited by defendants, is one instituted by a husband against his wife to enforce specific performance of a contract, which, *inter alia*, had the following provision:

"It is hereby understood and agreed by and between the above named parties, that all property, real and personal of whatsoever description or nature, all income from whatever source, wheresoever situated, acquired during the marital state of the parties hereto, *shall be and is the joint in entirety and community property in undivided moieties* and is and shall be subject only to the joint control and disposition of the parties hereto; * * *."

This court, speaking through Mr. Justice BAILEY, said:

"We have had no assistance here as to what may be meant by the part of the contract which

we have italicised." (Referring to portion herein-above italicised.)

"It is difficult to say whether the language used by plaintiff sought to make all the real and personal property the joint property of the parties to this litigation or intended to make them tenants by the entirety, or to have their possessions considered as community property, as that term is understood in states having community property laws, or what was intended by 'undivided moieties'."

The contract in the Alexander case also contained the following provision:

"That within ten days from the date hereof, a joint agreement shall be entered into by and between the parties hereto relating to the disposition of said joint property, in the event of the death of one, and in the event of the death of both of the parties hereto."

Referring to the provision last quoted, Mr. Justice BAILEY said:

"The contract involved in this suit is not definite in its terms and does not contain all the terms and conditions intended by the parties to be settled before it should become effective. One of the component parts of the contract is merely to make a contract sometime in the future. It is therefore not enforceable, because a material part thereof, that is, the agreement for a final disposition of the property is left open to future negotiations between the parties and neither party can be compelled to accept the offer of the adversary party: Holtz v. Olds, 84 Or. 567, (164 P. 583)."

No such uncertainty or indefiniteness attends the contract in suit.

In *Edwards v. Tobin et al,* 132 Or. 38, 284 P. 562, 68 A. L. R. 152, the contract sought to be enforced

consisted of a lease of hotel property that contained the following provision:

"It is further mutually agreed by and between the parties hereto that the lessees shall have an option to renew this lease at the expiration thereof, for a period of five years, subject to the conditions herein on the same terms as expressed in the within instrument with the exception of the rate of rental, which shall be determined at said time of renewal between the parties; said rental to be a reasonable rental under the then existing conditions."

This court, speaking through Mr. Justice BELT, upheld the decree of the trial court wherein $200.00 per month was fixed as a reasonable rental and specific performance of the contract thus completed was decreed.

We find nothing in the doctrine of *Edwards v. Tobin,* supra, which would justify a reversal of the decree of the trial court in the case at bar.

The case of *Hyland v. Oregon Agricultural Co.,* 111 Or. 212, 225 P. 728, cited by defendants, is rendered very definitely distinguishable from the instant case by the following statement in the opinion of this court speaking through Mr. Justice RAND:

"The defendant, by the terms of the contract sought to be specifically enforced, undertook to procure for plaintiff the assignment of 1,280 acres of logged-off land * * * and the only description of the land is that it shall be 'logged-off land situate in Cowlitz and Clarke Counties, Washington.' This description would apply to any parcel of logged-off land of that acreage situate partially in both counties for which assignments from the Northern Pacific Railroad Company could be procured. What land was referred to cannot be ascertained by any words, phrase or expression to be found in the contract itself, * * * * *."

The description in the option contract in suit definitely specifies the north 58 feet of lot 1, block 4, Georgetown's Addition to Cottage Grove, Lane County, State of Oregon, immediately south of which is defendants' pattern shop. No extrinsic testimony is required to identify the property thus described.

In support of defendants' third assignment of error, 58 C. J., pp. 953 and 954, Section 127, is cited. The rule there stated requires plaintiffs' conduct in obtaining the contract to be perfectly fair and equitable. Reference is also made to the case of *Shikes v. Gabelnick*, 273 Mass. 201, 173 N. E. 495, 87 A. L. R. 1339, wherein it is held that false and fraudulent representations will defeat specific performance even though they have not been relied on by defendant. It is unnecessary for us to pass upon the soundness of this holding for the reason that a consideration of the record in this case discloses no fraudulent representations on plaintiffs' part.

As stated, defendants contend that plaintiffs represented that they had procured the permission of their stepmother to buy the property in suit. As we read the testimony, we think that the trial court was justified in thinking that plaintiffs had merely discussed the matter of their proposed purchase with their stepmother, and had so stated to Mr. Coop.

Mrs. Jessie Gamet was called by defendants and testified that she is the widow of Mr. Gamet, Sr. We quote as follows from her testimony:

"Q Have you had conversations with these three boys, your stepchildren, regarding the purchase of the personal property from you as executor?
A The only thing they told me they would give me more than any one else.

Q When was that conversation you had with them?

A That was soon after their father passed away."

Mrs. Gamet testified that there was conflict between plaintiffs and herself.

Upon cross-examination by plaintiffs' attorney, she testified as follows:

"Q Mrs. Gamet, haven't you already arranged to sell the machinery in that building right at the present time?

A When they told us they would pay us a price they made a deposit of a hundred dollars. I can't tell you the time, but they were to deposit a thousand more on the 18th of November, and so far they have not deposited that.

Q Who do you mean by 'they'?

A The two boys, Charles and Lyle."

The rule invoked has its basis in the equitable maxim that, "He who comes into equity, must do so with clean hands." We find nothing in this record which would justify a holding that plaintiffs have not complied with the mandate of that maxim.

It is obvious, however, that until the southern boundary of the premises in suit has been definitely determined by the survey expressly provided for in the option contract, no deed of conveyance can be properly executed.

"Where, in a suit for specific performance of a contract for the sale of land, it is uncertain as to how much or what land should be conveyed, unless the defect of proof is of such a nature as to warrant a dismissal of the bill, the court may order a survey of the land to be made, and may appoint a surveyor for this purpose. Where during the course of the survey, one of the parties

raises objections thereto, the court, before rendering judgment, should hear both sides regarding the surveyor's report, as submitted, and should give the objecting party an opportunity to defend his rights." 58 C. J., Subject: Specific Performance, p. 1150, Sec. 464, citing in notes 42, 43 and 43-½, *Hancock v. Hancock,* 1 T. B. Mon. (Ky.) 121, 15 Am. D. 92; *Herdic's App.* 58 Pa. 211; *Wigginton v. Ewell,* 13 Ky. L. 825, 17 S. W. 740, and *Calzada v. Pagan,* 20 Porto Rico 431.

■ It is equally apparent that the mutual use of the elevator, which is partly upon the premises in suit and partly upon the property owned by defendants, will constitute an easement impressed upon both properties.

For these reasons, the decree of the trial court is reversed and this cause remanded so that the proper description of the real property to be conveyed to plaintiffs by defendants may be procured and the appropriate recognition given of the respective easements which are to be impressed upon the real properties of the parties plaintiffs and defendants respectively in the use of the elevator.

The decree of the circuit court is reversed and the cause remanded for further proceedings not inconsistent herewith, neither party to recover costs or disbursements on this appeal.