OATES, *Appellant,*
*v.*
STUMP et ux, *Respondents.*
(No. 23146, SC 25079)
569 P2d 7

Asa L. Lewelling, Salem, argued the cause and filed briefs for appellant.

Vickie K. Wallstrom, certified law student, argued the cause for respondents. On the brief were John L. Hemann, and Garrett, Seideman, Hemann & Robertson, P.C., Salem.

Before Denecke, Chief Justice, and Holman, Howell, and Lent, Justices.

HOWELL, J.

## HOWELL, J.

Plaintiff filed this suit against the defendants to secure specific performance of an option to purchase a residence and a small tract of land on the outskirts of Monmouth in Polk County. At the close of plaintiff's case the trial court granted defendants' motion for a dismissal.[1] Plaintiff appeals, and we reverse.

We review the evidence de novo. The following is a summary of our determination of the facts.

In September, 1973, plaintiff, as lessee, and defendants, as lessors, entered into a lease option to purchase agreement. The agreement described the property as Route 1, Box 89, Monmouth, Oregon, "together with the yard area attendant thereto," which was a part of a five-acre tract. The contract also stated:

> "The Landlord agrees that prior to the end of the term of this Agreement he shall subdivide, partition or otherwise divide the premises so as to leave the house upon a reasonably shaped lot no smaller than one-half acre in area. Tenant shall have the right and option at the end of the term to purchase the house and that lot to be created by the Landlord, and any and all structures and improvements thereon, upon written notice, addressed to the Landlord at the address set forth herein, not less than 60 days prior to the end of the term.
>
> "* * * * *.
>
> "Should the Landlord be unable to lawfully subdivide, partition or otherwise divide the property so as to provide a lot one-half acre in size, the Landlord may, at his option, tender to the Tenant a lot containing the residence house, which lot shall, in any case, exclude the shed now upon the property, and the Tenant shall pay to the Landlord, should the Tenant wish to exercise this option, a price equal to $1,000 for an additional half acre,

---

[1] In *Newman v. Stover,* 187 Or 641, 213 P2d 137 (1950), we indicated our disapproval of a motion for dismissal at the conclusion of the plaintiff's case in an equity suit and stated that the trial court should require the defendant to rest before considering such a motion in order to avoid piecemeal appeals. Under these circumstances, we will treat the motion for dismissal as the equivalent of a formal resting of defendants' case. *See Frankland v. City of Lake Oswego,* 267 Or 452, 517 P2d 1042 (1973).

or prorata share of any portion of added property in excess of one-half acre in size, but less than one acre in size."

The contract also provided for a rental of $250 per month, $100 of which was to be applied to the eventual purchase price.

Prior to the execution of the lease, plaintiff's husband, the defendant Arthur Stump, and Kenneth Richards, the prior tenant, walked around the property as defendant pointed out the boundaries of the original one-half acre parcel surrounding the house. The bounds of this one-half acre were marked by a partial fence on the west side of the residence, a short retaining wall on the east side, the Monmouth-Falls City state highway on the north, and a steep bank approximately 20 or 25 feet behind the house on the south. Because of zoning restrictions, it was also agreed that an additional one-half acre would be added at the time of sale if that proved necessary.

Plaintiff took possession of the property and planted an orchard and a garden. Approximately two years later, in August, 1975, defendants wrote to plaintiff about the option to purchase and broadened that original offer to include the following alternatives:

"For your information I am listing the several options we have discussed so you can decide which you want. I discussed the machine shed (I am offering it to you at its depreciated price. It cost $2600 to build in 1957) with Cliff and he said if you bought it he would like to rent it from you. I know he will rent any of the land you don't want to use also.

|  | You have prepaid 2400.00 | |
| Property | Sale Price | You Owe |
| 1. House + ½ Acre | 30,000 | 27,600 |
| 2. House + 1 Acre | 31,000 | 28,600 |
| 3. House + 2 Acres | 33,000 | 30,600 |
| 4. House + 3 Acres | 35,000 | 32,600 |
| 5. House + machine shed and 3 Acres | 36,300 | 33,900 |

6. House + machine shed
   and 2 Acres                34,300      31,900

When you decide how much you want to buy then we will have to decide just where the land will lie and have is [sic] surveyed. Ask Ken and/or Cliff to estimate it and step it off."

After receipt of this letter, plaintiff called defendants and agreed to purchase the house, the machine shed and three acres for the $36,300 offered. These three acres were to include the original one-half acre surrounding the house, another one-half acre to the east which included the machine shed, and an additional two acres to the west of the original one-half acre. The defendants agreed and promised to get the property surveyed in time to close the deal by the first of January, 1976. However, defendants now refuse to make any effort to carry through with their agreement to survey the property selected and to transfer it to plaintiff.

■■ At trial, it was defendants' position, and the court agreed, that the description of the property was too indefinite to allow a decree of specific performance. If we were to accept this position, defendant would be allowed to avoid the entire purchase option by the simple expedient of refusing to provide the survey which they agreed to perform. That would mean, in effect, that plaintiff, after having made significant improvements in reliance upon this option and having paid over $2400 as a credit toward the eventual purchase, would be completely without any legal right to complete that purchase.

Recently, in the case of *Van v. Fox*, 278 Or 439, 564 P2d 695 (1977), we pointed out that equity courts have been reluctant to declare a contract too indefinite to allow for specific performance when the plaintiff has partially performed the agreement. We quoted and applied the following rule from J. Pomeroy, Specific Performance of Contracts 378-79, § 145 (3d ed 1926):

" "* * * [W]hen a *contract has been partly performed* by the plaintiff, and the defendant has received and

enjoys the benefits thereof, and the plaintiff would be virtually remediless unless the contract were enforced, the court, from the plainest considerations of equity and common justice, does not regard with favor any objections raised by the defendant merely on the ground of the incompleteness or uncertainty of the agreement. Even if the agreement be incomplete, the court will then, in furtherance of justice and to prevent a most inequitable result, decree a performance of its terms as far as possible, although, perhaps, with compensation or allowance. In fact * * * one ground of the equitable jurisdiction to decree a specific performance is the incompleteness of the contract, which would prevent an action at law, but which exists to such a limited extent and under such circumstances that a refusal to grant any relief would be plainly inequitable.' " 278 Or at 450-51. (Emphasis in original; footnotes omitted.)

*See also* 5A Corbin on Contracts 287, § 1174 (1964); 11 Williston on Contracts 819 and n. 15, § 1424 (3d ed 1968).

■ Having reviewed the testimony and the exhibits in this case, we believe that the agreement of these parties is sufficiently definite to be specifically enforced, based upon the option selected by plaintiff and agreed to by the defendants. The key parcel is the original one-half acre surrounding the house, the boundaries of which were agreed upon by the parties at the time of the lease agreement, as discussed above. From these points of reference, it will be possible to survey the additional parcel which consists of approximately one-half acre and includes the machine shed east of the original parcel. The highway will form the northern border; there is a vegetation break to mark the eastern edge; the west side abuts the original parcel; and the southern border can be established by extending the rear line of that original parcel. In essentially the same fashion, it should be possible to determine the boundaries of the two additional acres to the west of the original one-half acre parcel. This can be done by extending the common south line at the rear of the two one-half acre parcels and by proceeding

[ 402 ]

along the highway which forms the northern border until a line drawn between the highway and the southern border encloses the required two acres. It is apparent to us from the evidence in this case that this is essentially what was contemplated by both parties to this agreement.

■ The fact that a survey will be necessary before the property can be transferred to plaintiff is not an insurmountable barrier to a decree of specific performance. The purchase option itself provides for such a survey, and defendants had subsequently promised to perform one in time to close the deal by January 1, 1976. Moreover, in *Gamet et al v. Coop et ux,* 182 Or 78, 185 P2d 670 (1947), this court overcame substantially the same kind of problem by ordering the performance of a similar survey. In rejecting the argument that the agreement in that case was too indefinite for specific performance because the south boundary was not shown, we stated:

> "It is obvious, however, that until the southern boundary of the premises in suit has been definitely determined by the survey expressly provided for in the option contract, no deed of conveyance can be properly executed.
>
> " 'Where, in a suit for specific performance of a contract for the sale of land, it is uncertain as to how much or what land should be conveyed, unless the defect of proof is of such a nature as to warrant a dismissal of the bill, the court may order a survey of the land to be made, and may appoint a surveyor for this purpose. Where during the course of the survey, one of the parties raises objections thereto, the court, before rendering judgment, should hear both sides regarding the surveyor's report, as submitted, and should give the objecting party an opportunity to defend his rights.' [58 CJ 1150, Specific Performance § 464 (1932).]" 182 Or at 91-92.[2]

---

[2]The defendants' reliance upon *Meadowlark Inv. Corp. v. Croeni,* 237 Or 535, 392 P2d 327 (1964), in support of a contrary rule is misplaced. In that case, plaintiffs were not able to establish which 39 acres were to be

Finally, it must be remembered that plaintiff has partially performed the agreement in question. She has invested over $2,400 as a credit toward the purchase price and the property has been improved in reliance upon her option to purchase. Under the circumstances, we feel that it would be particularly inequitable to deny specific performance in this case.

Therefore, we conclude that the defendants should be required to perform the survey as they specifically agreed so as to establish the boundaries of plaintiff's three acres with the degree of certainty required for the execution of a deed. Thereafter, the trial court shall enter a decree of specific performance requiring a conveyance of the property so described.

Reversed and remanded for further proceedings consistent with this decision.

---

conveyed to them out of a 46-acre parcel. Unlike this case, there was no evidence in *Meadowlark* that the parties had ever agreed which acres were actually to be transferred or had established definite points of reference which would be sufficient to identify those acres with the requisite specificity. *Compare Howard v. Thomas,* 270 Or 6, 526 P2d 552 (1974).