Argued and submitted November 19, 1982, reversed and remanded with
instructions April 13, reconsideration denied June 3, petition for review allowed
August 2, 1983 (295 Or 466)

GENEST,
*Appellant,*
*v.*
JOHN GLENN CORPORATION et al,
*Respondents.*

(113,798; CA A23098)

661 P2d 1383

Paul J. Lipscomb, Salem, argued the cause for appellant. With him on the briefs was Ron MacDonald and Blair, MacDonald, Jensen & Lipscomb, Salem.

J. Michael Alexander, Salem, argued the cause for respondents. With him on the brief was Brown, Burt, Swanson, Lathen & Alexander, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

**WARDEN, J.**

This is an action to compel specific performance of a contract to sell real property. The trial court found that the parties had agreed on a sale of the property for a definite price but refused to grant specific performance because of omissions in the terms and conditions of the sale. Plaintiff appeals. Our review is *de novo*.

Plaintiff began negotiations for the purchase of a restaurant business from defendant[1] sometime in 1971. Throughout the negotiations, plaintiff dealt solely with Acmer Corporation through its president, Crain, a real estate and business broker with whom defendant had listed its business. The listing agreement provided for sale of the business, a ten-year lease of the real property with an option to renew and the "right of first refusal on real property at the end of the lease period." Plaintiff was interested in purchasing the real estate, and Crain's first offer, in the form of an earnest money receipt dated February 5, 1972, included provision for a ten-year lease of the premises with an option to purchase, exercisable after five years. The option did not specify the price, and defendant did not accept the offer. After further negotiations, plaintiff, defendant and Crain signed an earnest money agreement on February 21, 1972. It provided for a sale of the business and a ten-year lease of the premises, with monthly rent payments of $3,500 or five percent of gross food sales plus seven percent of gross liquor sales, whichever was greater. The agreement further provided:

> "Lease to provide an option to purchase which can be exercised at any time from commencement of fifth year. Purchase price to be in the amount of $425,000 with 20 percent of lease payments to be allowed as credit against purchase; price to include rear office rental building, all parking areas and other existing buildings."

A supplement to the earnest money agreement, dated February 29, 1972, and signed by the same parties, provided:

> "Offer to purchase accepted subject to the following modifications:
>
> "* * * * *

---

[1] For simplicity we shall refer to the corporate and individual defendants as "defendant."

"7.) Purchaser is hereby granted the option to purchase the real property on the following terms and conditions: Purchase price to be $425,000 with credit of 10 percent of total lease payments during the life of the lease being allowed as a credit against the purchase price. Option to purchase may not be exercised for a period of five years. Down payment and principal payments may not exceed 29 percent in year option is exercised."

Another supplement, signed the next day, stated:

"Counter offer of 2-29-72 accepted subject to:

"* * * * *

"3.) Credit on lease fees paid to be increased from 10 percent to 15 percent."

On March 23, 1972, plaintiff and defendant entered into a ten-year lease of the restaurant premises. The property leased was precisely described in an exhibit appended to the lease. The rent was as specified in the earnest money agreement. The lease contained an integration clause and also an option to purchase:

"Lessee submits to Lessor its option to purchase the real property upon which the Keg & Platter is located and adjacent property which presently is owned by the Lessor. Said option proposed by Lessee shall be *not less than* $425,000 and said option may be exercised by Lessee at any time after five years from the date of this agreement, and while this lease is in force and effect. The terms of Lessee's option to purchase said real property provide in part, that no more than twenty-nine percent (29%) of the total purchase price shall be paid as a down payment during the year the option is exercised; also, under the terms of this lease, Lessee shall have as a credit for the purchase of said real property an amount of fifteen percent (15%) of the total lease payments made to the date of Lessee's purchase of the real property, to apply to the purchase price." (Emphasis supplied.)

On March 31, 1972, the parties signed a sale agreement covering the restaurant business only. The earnest money agreement of February 21, with its amendments of February 29 and March 1, was attached to and was incorporated as part of the sale agreement, in a paragraph entitled "other terms of this agreement."

Five years later, plaintiff informed defendant of his intent to exercise the option. Defendant refused to sell

the property, taking the position that the option was not a firm committment to sell at any fixed price.[2] Instead, defendant offered to sell plaintiff the property for $800,000. This action for specific performance followed.

The trial judge found that

"the manifest intent of the parties was that they be bound by the terms of the earnest money agreement in its final amended form. The lease and sales agreements were merely memorials of the pre-existing contract."

With that we agree. The earnest money agreement stated a fixed purchase price of $425,000. The first supplement to the earnest money agreement, prepared by Crain on behalf of defendant, stated, "Offer to purchase accepted subject to the following modifications: * * * Purchase price to be $425,000 * * *." The second supplement did not mention the purchase price. The earnest money agreement, including the two supplements thereto, was incorporated into the agreement for sale of the business, which was the final document signed by the parties.

The lease was drawn by defendant's attorney. As for the words "not less than" in the price part of the purchase option, plaintiff testified that, when he questioned Crain about the addition of those words, Crain assured him that the addition was irrelevant because the purchase price of the option was specifically spelled out in the agreement of sale.[3] Plaintiff, who was not represented by an attorney at the time he entered into the lease, testified that he signed the lease only because of that representation by Crain. Plaintiff also testified that he had told Crain that he was not willing to purchase the business at the agreed price without the option to purchase the real estate for $425,000. The trial court found that plaintiff was a credible

---

[2] At one point after the attempted exercise of the option, counsel for defendant wrote a letter to counsel for plaintiff which stated, "[M]y people will agree as to the purchase price of the option at $425,000." Defendant claims that the letter had no effect because of the notation, "Dictated but not read," at the bottom of the letter. The lawyer who signed the letter testified that the words "will agree" were the result of a "scrivener's error" and should have read "will not agree." The letter continued, saying that a "letter will follow this week relative to other matters involed [sic] as they disagree with certain other contentions presented in your prior correspondence."

[3] Crain testified that he did not recall such a conversation.

witness. Crain testified that it was his intent as agent for defendant, in drafting the earnest money agreement with its amendments, that plaintiff be granted an option to purchase at a fixed price. Defendant John Wilbur, who actually participated in the negotiations on behalf of defendant, testified that at the time he considered the earnest money agreement to be a firm commitment to sell the property for $425,000 and that there were no further negotiations between the time of the final amendment to the earnest money agreement and the time the lease was signed. Moreover, as a memorial of the existing agreement to sell at a specified price, the option as expressed in the lease is accurate, inasmuch as $425,000 *is* "not less than" $425,000. We find that the parties agreed on an option to purchase for the firm price of $425,000.[4]

The trial court decided that, although the parties had agreed to a purchase option at a definite price, specific performance of the sale could not be ordered because other material terms of the sale were omitted, in particular, provisions regarding the interest rate, subordination of other interests, the form of security, the payment of taxes, insurance obligations and whether sale was to be consummated by a deed, by a deed with a note and a mortgage or by a land sale contract. Defendant agreed on a purchase price of $425,000 and that no more than 29 percent of this amount would be paid in the year the option was exercised.

---

[4] The integration clause of the lease, relied upon by defendant, reads:

"(22) *Lease Acceptance.* This agreement contains all the oral and written agreements, representations and arrangements between the parties hereto; and any rights which the respective parties hereto may have under any previous contracts or oral arrangements are hereby cancelled and terminated; and no representations or warranties are made or implied other than as set forth herein; and no oral agreement or representations for rental shall be deemed to constitute a lease other than this agreement. This lease may not be amended hereto except by written instrument signed by each of the parties."

We take this clause to apply only to the agreement between the parties as to the lease itself, and not to the prior documents regarding the sale of the business and the option to purchase. That is the only reasonable interpretation. Otherwise, the clause may be read to cancel and terminate the prior earnest money agreement; but plaintiff clearly would not have executed a lease of the premises without having purchased the business that was being operated there. Even if the earnest money agreement was superseded by the lease, it was expressly incorporated in the subsequent agreement for sale of the business.

■ We point out two general considerations. First, as the court stated in *Van v. Fox,* 278 Or 439, 564 P2d 695 (1977), when the essential features of an agreement have been determined, leaving additional terms to be negotiated, "the law will recognize a requirement that these further negotiations must be conducted in good faith by both parties." 278 Or at 449. Here, when plaintiff attempted to exercise the option by tendering to defendant 29 percent of $425,000 and offering to pay the remaining balance according to the wishes of the defendant, defendant reneged, not because of any uncertainty in the terms of the agreement, but only because of defendant's assertion that it had never agreed to sell at a specified price. It failed to negotiate in good faith.

■ Second, as the court also stated in *Van v. Fox, supra,* part performance of a contract weighs in favor of specific performance. It quoted J. Pomeroy, Specific Enforcement of Contracts 378, § 145 (3d ed 1926):

> "* * * [W]hen a *contract has been partly performed* by the plaintiff, and the defendant has received and enjoys the benefit thereof, and the plaintiff would be virtually remediless unless the contract were enforced, the court, from the plainest considerations of equity and common justice, does not regard with favor any objections raised by the defendant merely on the ground of incompleteness or uncertainty of the agreement." 278 Or at 451.

In *Oates v. Stump,* 279 Or 397, 569 P2d 7 (1977), the Supreme Court directed entry of a decree of specific performance of an option to purchase realty, where $2,400 of lease payments were to be allowed as a credit against the purchase price of $36,300. The court considered the lease payment credit (along with minor improvements made by the plaintiff) as part performance that invoked the rule of *Van v. Fox, supra,* and stated that it would be "particularly inequitable" to deny specific performance under those circumstances. 279 Or at 404. Here, plaintiff has partially performed by purchasing the business located on the property and making lease payments for more than five years, from which $70,207.39 was to be credited to the purchase price.

■ The clear trend of the law is that contracts to sell real estate may be specifically enforced despite omission of

unessential terms or indefiniteness of essential terms, if the defects can be cured by the application of "courageous common sense" by the court. 5A Corbin, Contracts, § 1174 (1964); *Southworth v. Oliver,* 284 Or 361, 587 P2d 994 (1978); *Van v. Fox, supra; Howard v. Thomas,* 270 Or 6, 526 P2d 552 (1974).

> "[T]he important distinction to be made is between the 'material' terms of a contract, which must be agreed upon in sufficiently definite terms before there exists a valid contract which may be enforced by a decree of specific performance, and the non-material terms or 'subordinate details of performance.'" *David M. Scott Construction v. Farrell,* 285 Or 563, 572, 592 P2d 551 (1979).

Here, the purchase price, the subject property and the parties have been agreed on. The problem of the missing terms is only an apparent one, used by defendant as an excuse to avoid a contractual obligation. We hold that the contract may be specifically enforced, by payment of 29 percent of the purchase price in the first year and the balance, together with interest at ten percent per annum, in the ensuing year, and conditioned upon plaintiff providing adequate security.

Reversed and remanded with instructions to enter a decree of specific performance not inconsistent with this opinion.