Argued April 19; affirmed May 9; petition for rehearing denied
June 27, 1950

## BOCK *v.* SCHOTT and PORTLAND TRUST AND SAVINGS BANK, Guardian

217 P. (2d) 768

*O. B. Setters,* of Portland, argued the cause for appellant. With him on the briefs was Frank H. Pozzi, of Portland.

*Chester E. McCarty,* of Portland, argued the cause for respondents. On the brief were McCarty, Dickson & Swindells, and William Miller, all of Portland.

Before Lusk, Chief Justice, and Brand, Belt, Hay and Latourette, Justices.

BELT, J.

This is a suit to compel specific performance of an alleged contract to convey real property. From a decree dismissing the suit with prejudice, the plaintiff has appealed.

On September 1, 1943, the plaintiff and the defendant, Louis Schott, entered into a written contract as follows:

"Portland Oregon
at 17th and Woodward
September 1
year 1943

"Louis Schoot and Emery Contract

"Emery Bock Bought From Louis Schoot Emery Bought Back His own Property at 17 S E woodward where wher he is living now and the Property at 9114 S E Powell Valley Six Ackers that Louis Shoot owns now Louis Shoot Sold it to Emery Bock For Five thousaund $5000.00 Property to Be Paid Same same as Rent at $15.00 Fifteen Dollars a Month Ressets will Be Made By Louis Schott Paid For Rent ontill Property Paid For Property Must Be Paid in ten years or Beffore ten years Emery Bock in Paying Louis Schott Seven Hundred and Fifty Dollars $750.00 Dollars in Cash Money For the Property at 92 and Powell Vally Road and 6 ackers at 92 and Powel Vally Road For the Property at 92 and Powell Emery will Get Back All the Rent that He Hass Paid in Rent sense the September 12th 1940 Year that is $15.00 Dollars a Month Fifteen Dollars a month Sens Seans September 12th Year 1940 For Rent that Emery Bock Paid Louis schoot towards Page over *Louis Schott* the Property that schoot

Owones Now at 92 St and Powell Valley and 6 akers
when Emery Bock Pays louis Shoot in Rent and
Cash Money Five thousand Dollars Mr Louis schoot
will Give Emery Bock the clear tittle For the Prop-
erty that that he Bought From Louis Schot at 92
and Powel Valley and 6 acres Property Emery
Bock For the Property at 17th woodward to Pay
Same as Rent at 15 month till Paid of the Judgment
what Ever the Judgment mit Be ther in the Court
House in the Multnomah Court House in Portland
Oregon that is From March 15th 1937 and then Get
the Property Back From Louis schoot Here in
Portland Oregon when it is Paid in Rent and Money
to Mr. Louis schoot Here in Portland Oregon I will
Pay Here in Rush
/s/ *Louis Schott.*          /s/ Emery Bock''

It is the contention of the plaintiff that the above
instrument is a contract whereby the defendant Schott
agreed to sell and the plaintiff agreed to buy two par-
cels of land, namely, Tract 1 at "9114 S E Powell
Valley Six Ackers" at the purchase price of $5,000.00,
and Tract 2 at "17th woodward" for the amount speci-
fied in the Sheriff's Return ($1,592.64) of sale on exe-
cution arising out of a mortgage foreclosure proceed-
ing. The defendants assert that the contract created
the relationship of landlord and tenant and not that
of vendor and vendee. The circuit court was of the
opinion that the contract was not one for the sale of
real property but created the relationship of landlord
and tenant.

■ It is fundamental that equity will not decree spe-
cific performance of a contract unless its terms are
clear, definite and certain. *Champion et ux v. Hammer
et ux*, 178 Or. 595, 169 P. (2d) 119; *Wurzweiler v. Cox*,
138 Or. 110, 5 P. (2d) 699; 49 Am. Jur., Specific Per-
formance, 34, § 22. If there is reasonable doubt as to the

intention of the parties, such equitable relief will not be granted. This contract, which was prepared by the plaintiff and is in his handwriting, has some of the aspects of a sale of real property, but there is also language in the instrument which might well refer to a lease. The contract is particularly ambiguous in reference to the property at "17th woodward." The subject matter and the purchase price are vague and uncertain.

Plaintiff claims that he made the following payments in cash: $750.00 on execution of the contract; $1,500.00 on July 9, 1944; $2,000.00 on July 21, 1945; and the final payment of $3,000.00 on July 5, 1946. If these amounts were actually paid by the plaintiff— which the defendants deny—they would amount in the aggregate to the sum of $7,250.00, which would be an excess payment of $657.36—to say nothing of the "rental payments" made by plaintiff. The plaintiff in explaining these alleged overpayments stated that it was understood between him and the defendant Schott—although it is not so expressed in the written contract—that the surplus payments would apply on the purchase of other real property not mentioned in the above agreement. It is significant that after the alleged payment of $3,000.00, the plaintiff continued to make rental payments of $15.00 per month on each tract, as evidenced by the receipts signed by Schott.

This transaction is not free from suspicion. The defendant Schott was adjudged incompetent on December 12, 1946. The receipts *for rent* were in the handwriting of Schott, but the receipts for the larger alleged payments in cash were in the handwriting of the plaintiff. Schott was in court accompanied by his nurse but on account of his mental condition was

wholly incapacitated from testifying. So far as disclosing the truth of this transaction, the defendant was in court as if his lips were sealed in death.

The testimony of the plaintiff is quite evasive and unsatisfactory as to where he procured the cash with which to make these alleged payments. In one part of his testimony the plaintiff claimed that he had earned the money by selling fruit and vegetables at a small roadside stand. When his attention was directed to the receipts relative to the larger payments that were made in the months of July, and he was asked to explain how it came that the payments were made at such time, he stated in effect that the money came from the sale of fire crackers during the Fourth of July season. The plaintiff also testified that while he was in the penitentiary in 1940, his mother died and left $8,000.00 in cash with her husband with directions to give it to the plaintiff when he was released from prison. No estate of the mother was probated. Plaintiff admits that he never told his attorneys about this matter until "between 4 and 10 days" before the trial, and in a previous deposition taken two months before the trial, no mention was made about such a gift from his mother. The fact that plaintiff had a criminal record and had served a term in the penitentiary did not lend any weight to his testimony.

■ We have read the record in its entirety and are convinced that the plaintiff did not show by clear and convincing proof that he was entitled to the equitable relief sought. The decree of the circuit court is affirmed and the defendants will recover costs and disbursements.