Argued and submitted January 25, affirmed February 27, 1991

## LOST SPRINGS DEVELOPMENT, INC.,
Sharon Kelly, Zane Kelly
and Tracy Kelly,
*Appellants,*

*v.*

## Arthur WHITELEY
and Barbara Whiteley,
*Respondents.*

(89C10655; CA A63098)

807 P2d 304

J. Michael Alexander, Salem, argued the cause for appellants. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Steven R. Summers, Stayton, argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

EDMONDS, J.

## EDMONDS, J.

Plaintiffs appeal a judgment that dismissed their claim for specific performance of a purported agreement regarding the sale of real property.[1] On *de novo* review, ORS 19.125(3), we affirm.

In 1979, defendants sold the Detroit Lake Marina and Store to the Brandts, secured by a note and trust deed. The Brandts sold the property to plaintiffs in 1985 by a contract of sale. Plaintiffs defaulted on their obligation to the Brandts, who then defaulted on their obligation to defendants. In May, 1988, the Brandts obtained a judgment of foreclosure against plaintiffs, although plaintiffs remained in possession of the property. Defendants began negotiating to sell their interest in the property to plaintiffs. Pursuant to those negotiations, in May, 1988, plaintiffs presented defendants a letter of intent,[2] along with a photocopy of a $500 check and a

---

[1] The complaint prayed for declaratory and injunctive relief, as well as specific performance of the letter of intent. The appeal is limited to the court's denial of specific performance.

[2] The "Letter of Intent" reads:

"May 24, 1988

"Arthur and Barbara Whitely [*sic*]
"Detroit, OR

"Letter of Intent
"RE: Kelly/Brandt/Whitely [*sic*]

"Sharon Y. Kelly, Tracy Kelly, L. Zane Kelly, Detroit Lake Marina and Store, and Lost Springs Development Co., Inc. these parties shall be referred to herein as Kelly's [*sic*].

"For one year Kelly's [*sic*] shall have the option to purchase the property described in Exhibit A for the sum of $50,000.00.

"If the Kelly's [*sic*] exercise the above option they shall receive title to all land and equipment free and clear from any and all encumbrances.

"Starting with the date of this letter, the Kelly's [*sic*] will commence making payments based on a purchase price of $60,000.00 for all the land, buildings, and equipment described in Exhibit A on even monthly payments based on a 20 year payment period and interest at the rate of 10%. In the event the Kelly's [*sic*] exercise the option provided for above, the monthly payments made will be credited toward the $50,000.00 purchase price to the extent that they represent payments on principal.

"Whitely [*sic*] will endemnify [*sic*] the Kelly's [*sic*] for any personal property claimed by anyone except the United Savings Bank.

"Whitely [*sic*] will save harmless and defend from any and all claims of any kind by the Brandts* including but not limited to any claims on Sharon Kelly's

proposed land sale contract.[3] Plaintiffs and defendants signed the letter of intent. However, the Brandts did not sign the letter, and no one signed the proposed land sale contract.

Plaintiffs continued to operate the business and made substantial improvements to the property. They also made regular monthly payments into their attorney's trust account for tender to defendants and arranged for cash-out financing. The parties exchanged numerous "agreements" and "land sales contracts" but did not execute any. Plaintiffs brought this action in April, 1989, seeking specific performance under the terms of the letter of intent. In May, 1989, the Brandts deeded their interest to defendants in lieu of foreclosure. Judgment was entered for defendants.

Plaintiffs assert that the trial court erred by finding that the agreement between the parties was not definite enough to support specific performance. Defendants argue that the letter was a mere summary of negotiations, that a contract was to be signed later and, therefore, that there were never mutual promises to buy and sell.

---

land in Idaho.

"The land, building, and docks shall be the only security for this obligation.

"There shall be no restrictions on remodeling or reconstruction or replacing personal property.

"Whitely [sic] will provide a deed and conveyance from the Brandt's [sic] to Kelly's [sic] conveying title to all real and personal property involved in the operation of the business of the Detroit Lake Marina.

"*Brandt herein refers to Jarvis Brandt, Michelle Brandt, husband and wife[,] and Alfred Brandt and June Brandt, husband and wife.

"Dated and agreed this _____ day of May, 1988.

| | |
|---|---|
| "*/s/ Sharon F. Kelly* | |
| "Sharon F. Kelly | Jarvis Brandt |
| "*/s/ L. Zane Kelly* | |
| "L. Zane Kelly | Michelle Brandt |
| "*/s/ Tracy Kelly* | |
| "Tracy Kelly | Alfred Brandt |
| "*/s/ Arthur Whitely* [sic] | |
| "Arthur Whitely [sic] | June Brandt |
| "*/s/ Barbara Whiteley* | |
| "Barbara Whitely" [sic] | |

[3] The photocopy of the check had this handwritten inscription:

"This check is to be executed to the [defendants] upon completion of contract related to letter of intent dated 5/24/88 between Kellys and Whiteleys."

Defendant Arthur Whiteley testified that plaintiff Zane Kelly told him that the letter of intent "was a nonbinding piece of paper and it was just to show the Brandts that [they] were negotiating." Accordingly, Whiteley "signed it with the intent to let [the] Brandts know that [they] were negotiating." Defendant Barbara Whiteley agreed, stating that

> "Arthur asked [Zane Kelly] what is this [letter of intent]. And Zane's exact words were I don't know but it's not binding, it's just to get things started."

Zane Kelly denied that he had done anything to make defendants think that the letter was not binding. He testified that he "understood [the letter of intent] to be an agreement to purchase the marina and write a contract so [they] could continue on with all points of the agreement." However, on direct examination, he testified:

> "I delivered [the letter of intent], if you will, to [defendants'] home, explained to them this was what we had negotiated between us, they can read it and sign it. The contract would follow. *This was not the final contract.*" (Emphasis supplied.)

Plaintiffs have the burden of proving that the parties intended the letter of intent to be a mutually binding agreement before they can be entitled to specific performance. *Bock v. Schott,* 189 Or 358, 217 P2d 768 (1950). The letter of intent contained signature lines for the Brandts, who had an ownership interest in the property in May, 1988, but it was not signed by them. The letter was also accompanied by a contract, which was never signed by the parties, and a copy of a check, delivery of which was conditioned on "completion of contract related to [the] letter of intent." In the light of those facts and the quoted testimony, we find that there was no binding contract. The trial court did not err in denying specific performance.

Affirmed.