**EDUCATIONAL PLACEMENT SERVICE, INC.,**
Plaintiff/Counter–Defendant/Appellee,

v.

**Rex WATTS and Mary Ann Watts,**
Defendants/Counter–Plaintiffs/Appellants,

v.

**Gregg McDOUGALL, Third–Party Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Nov. 21, 1989.

Application to Appeal Denied by
Supreme Court Feb. 5, 1990.

Raymon Sauer, Sauer & Sauer, Memphis, for plaintiff/appellee.

Glenn D. Everton, Griffin, Clift & Burns, Memphis, for defendants/appellants.

FARMER, Judge.

Educational Placement Service, Inc. (EPS), a Tennessee corporation, contracted with Rex Watts and Mary Ann Watts to purchase from the Wattses improved real estate located in Shelby County. The controversial portion of the contract provides:

> This contract is contingent upon the purchaser applying for and obtaining a _____ conventional loan from from [sic] a local lending institution within _____ days of this date. Said loan is to be amortized at _____% interest or whatever the prevailing rate more or less; for a period of 30 years. Application for this loan is to be made within 1 days of this date.

Gary Harte is a real estate broker and, pursuant to the contract, EPS gave Harte a check in the amount of $10,000.00 earnest money. Legal proceedings were commenced by the filing of a complaint by EPS against Gary Harte[1] and the Wattses wherein it is alleged that both Community Bank of Germantown and Union Planters National Bank rejected EPS's loan under the terms required by the contract. EPS prays that the court declare the contract void and seeks a return of the earnest money.

The Wattses answered the complaint and filed a counter-claim alleging that EPS was offered financing by several financial institutions conditioned solely upon signing of a personal guaranty by the corporation's president, Gregg McDougall, and the failure of McDougall to personally guarantee the loan constituted a breach of EPS's duty to exercise reasonable good faith efforts in obtaining financing. The Wattses also filed a third-party complaint against McDougall alleging that he breached his duty to exercise reasonable good faith efforts in obtaining financing.

The trial court granted EPS's motion for summary judgment and the Wattses appeal. Summary judgment is to be rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. C.P. 56.03. In ruling on a motion for summary judgment, the trial court and this Court must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted. *Graves v. Anchor Wire Corp. of Tennessee,* 692 S.W.2d 420 (Tenn.App. 1985); *Bennett v. Mid–South Terminals Corp.,* 660 S.W.2d 799 (Tenn.App.1983).

Our examination of the subject clause of the agreement discloses that, notwithstanding the blanks that were left unfilled, the

---

1. By consent order, Harte was dismissed upon paying the earnest money to the clerk of the court below.

contract was contingent upon the purchaser (EPS) applying for and obtaining a conventional loan from a local lending institution at the prevailing rate of interest more or less for a period of 30 years, the application to be made within one day of the date of the agreement.

In support of the motion for summary judgment, EPS presented the affidavit of Paul E. Engstrom, its vice-president. According to his affidavit, both Community Bank of Germantown and Union Planters National Bank declined to finance this purchase for EPS without the personal guaranty of the president of the corporation, Gregg McDougall. Engstrom was then approached by the Wattses, through Harte, concerning the possibility of a loan from the First State Bank of Parkin, Arkansas. Engstrom met with a representative of that bank who made a proposal which included a 15–year amortization, with annual renewal and the unrestricted right of the bank to call the loan at any time. Although he was willing to listen to the proposal, he did not want to do business with a bank outside of Memphis. He further states that this transaction was the first real estate purchase by EPS and was his first involvement in purchasing commercial real estate.

An affidavit was filed by the Wattses in opposition to summary judgment stating that a contract was offered to them signed by Gregg McDougall as president of EPS. When they learned that the condition required by Community Bank of Germantown and Union Planters was not acceptable to the purchasers, the Wattses arranged a financing package for 80 percent of the purchase price which would not require McDougall's personal guaranty. The terms of this loan were set forth in a letter from Mr. Watts to Harte dated March 4, 1988 which is attached to the affidavit and states:

> Providing Gregg McDougall can prove the earning ability of his company over the past four or five years, Brighton Bank has agreed to give him a 60% ($303,600.) loan on 58 Timber Creek Drive at very competitive rates and conditions and without Gregg McDougall's signature for personal liability.
>
> Also, we, Remar Builders, have agreed to give Gregg McDougall a 17% ($86,020.) second mortgage and you, Gary Harte, have agreed to give him a 3% ($15,180.) third mortgage at the same rates and conditions as Brighton Bank. It is Gregg McDougall's responsibility to provide the remaining 20% ($101,200.) down payment and his closing costs.
>
> We are asking that Gregg McDougall immediately make available the necessary documents to Brighton Bank and close as soon as the bank will allow. This offer will be withdrawn if not acted upon by March 7, 1988.

The record shows that Brighton Bank is located in Brighton, Tipton County, Tennessee.

They further presented the affidavit of Walter F. Plumlee, Jr., vice-president of Community Bank of Germantown with a letter from him to Engstrom attached. Basically, the letter explains the bank's requirement of personal guaranty.

The affidavit of Jerry L. Wood, vice-president of Union Planters, attaches a letter from him to Engstrom stating that his bank would be unable to approve EPS's request for a 90 percent loan. However, the bank had a broker through which it refers loans of this type, the maximum loan is 75 percent and requires personal guaranties of the principals. Wood further recites that EPS provided the bank with all corporate documents and information he requested to document and complete the loan application.

■■■ When a purchase agreement is contingent upon the buyer obtaining financing, implied in that agreement is a duty upon the buyer to make a reasonable effort to obtain adequate financing. *Covington v. Robinson*, 723 S.W.2d 643 (Tenn. App.1986). The question of reasonableness is a factual question to be determined by the trier of fact and, if there is a dispute,

summary judgment would not be proper. However, in this case the purchaser is a corporation. The parties contracted that the sale would be contingent upon the purchaser obtaining financing as agreed. McDougall, although he is the sole shareholder of EPS, was not a party to the agreement except to execute as president in behalf of the corporation. Many factors enter into a decision whether to incorporate, not the least of which is to seek to limit personal liability on the part of the principals. Once the decision is made to incorporate, a separate entity is created. That entity is empowered to enter into contracts, is subject to taxation and to liability. The purchasing corporation applied to two banks and there appears to be no disagreement but what they would be considered local lending institutions. Both required the personal guaranty of McDougall according to the affidavit of Engstrom which was not disputed on this point. As we view this matter, the issue presented by appellants on the theory of the third-party action against McDougall is that he acted unreasonably in refusing to personally guarantee the loan. Since he, individually, was not a party to the agreement, his reasonableness or unreasonableness in declining to personally guarantee is not the issue.

As we perceive the appellants' argument relative to EPS, they contend that EPS did not act reasonably because it should have anticipated that a lender would require a personal guaranty. It is evident that they were aware of such policy because Engstrom's affidavit states that it was longstanding corporate policy that officers never personally guarantee any debt of the corporation. However, even if it were factually determined that they should have been aware of this policy, or in fact were aware, the fact remains that the contract was contingent upon the corporation obtaining financing on the terms set forth in the agreement.

Appellants cite a decision of the Oregon Supreme Court, *Anaheim Co. v. Holcombe*, 246 Or. 541, 426 P.2d 743 (1967) which they present as factually indistinguishable from the case at bar. This was a suit by a corporation to recover earnest money. Anaheim was a closely held corporation and, in conjunction with moving a part of its operation to Oregon, the managing agent sought to purchase a home in Oregon for his private residence. However, he chose to purchase in the name of the corporation because of a claim pending against him personally. An earnest money agreement was executed which provided that "[t]his offer is contingent on obtaining a loan of $25,000.00." 426 P.2d at 745. A potential lender refused to make the loan without the signatures of the corporate officers in their personal capacity. No other loan application was actually made. The sellers offered terms which were identical to those of residential loans available in that area through the lender as to term of the loan, interest rate and payment schedule. The court further observed that the wife of Strausheim, for whom the home was to be purchased, purchased another home directly from the owner which had been shown to them on the same date that the earnest money agreement was executed. The court upheld the lower court's decision that the plaintiff (the corporation) failed to prove that it exercised reasonable efforts to obtain a loan, noting that the opinion of the trial court is binding unless the appellate court is of the opinion that the findings are not supported by any competent substantial evidence. There were also a number of disputed factual questions which were resolved by the trial court. We do not find this decision to be persuasive. The court did not hold that the corporation acted unreasonably because of the refusal of the principals to personally guarantee the loan.

Appellants do not contend that there is a factual dispute whether the Parkin, Arkansas or Brighton, Tennessee banks are local lending institutions as provided in the contract. The judgment of the trial court is affirmed and costs of this appeal are taxed to appellants, for which execution may issue if necessary.

TOMLIN, P.J., W.S., and CRAWFORD, J., concur.