IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 7, 2011 Session

## ELIZABETH C. WRIGHT, v. FREDERICO A. DIXON, III.

**Appeal from the Chancery Court for Knox County**
**No. 173056-3     Hon. Michel W. Moyers, Chancellor**

**No. E2010-01647-COA-R3-CV - FILED - MAY 2, 2011**

In this action to enforce a contract for the sale of real estate against defendant buyer, the Trial Court held that defendant failed to make reasonable efforts to obtain a loan in accordance with the requirement to obtain a mortgage for 100% financing, and awarded damages to plaintiff for breach of the contract since the plaintiff had sold the property before trial. On appeal, we hold that the evidence preponderates against the Trial Judge's finding that the defendant failed to put forth reasonable efforts to obtain a loan which was a condition in the contract for purchase of the property, and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

James B. Johnson, Nashville, Tennessee, for the appellant, Frederico A. Dixon, III.

Lewis S. Howard, Jr., and Elizabeth S. Dodd, Knoxville, Tennessee, for the appellee, Elizabeth C. Wright.

**OPINION**

Plaintiff brought this action seeking specific performance and damages against defendant, based on a contract to purchase real property located in Knoxville.

Plaintiff alleged defendant submitted an offer in the form of a Purchase and Sale Agreement to purchase the property. The Agreement provided for a closing date of June 13, 2008, and the date was extended by amendment to June 20, 2008. Plaintiff alleged that defendant failed to close and refused to provide his mortgage broker with necessary and requested information to process his loan.

Plaintiff alleged that she had complied with all contingencies of the agreement and was ready, willing and able to close on the sale, and asked the Court to award her compensatory and special damages if the specific performance was not granted.

The Trial Court held a hearing on April 22, 2010, and plaintiff testified that she was a realtor and listed her property for sale. Defendant submitted an offer, and plaintiff testified that she countered on the price and defendant countered that, and she countered again, and defendant submitted a counter-offer to include two adjoining lots. Plaintiff testified that she accepted the counter offer, and considered a binding agreement to have been reached.

Plaintiff testified that defendant began asking to delay the closing while waiting on a loan agreement. She testified that she never received written notice that the deal would not be closed and that on July 1, she received a faxed document from defendant's realtor asking that the earnest money be released to defendant. Plaintiff testified she refused to sign the document, and that she never had any conversation directly with defendant, but rather handled everything through his realtor. Plaintiff testified that she subsequently sold the house and one of the lots for less than defendant's contract called for.

Defendant then testified and brought witnesses who were connected with mortgage companies, and offered evidence that he was unable to get a loan for 100% financing as the contract of sale was conditioned on 100% financing.

The Trial Court took the matter under advisement, and later entered a Memorandum Opinion and Order, and found:

"[t]hat agreement contained a contingency that rendered performance contingent upon defendant's ability to secure 100% financing, and further that the loan could be conventional or 'other'. Defendant was required to apply for the loan within five days of the binding agreement date, and was required to notify plaintiff's representative of the loan application and of the lender's name and contact information."

The Trial Court then found that defendant made no effort to secure financing pursuant to the agreement until June 12, 2008, the day before the scheduled closing. The Court concluded by finding that the contract for the sale of the property was contingent upon the

-2-

purchaser arranging for financing "confers upon the purchaser a duty to use reasonable efforts to obtain such financing." The Court also noted that whether the purchaser's efforts to obtain financing were reasonable was a question of fact, and found that defendant's efforts were insufficient to demonstrate a good faith attempt to secure the necessary financing. The Court described defendant's efforts as "woefully short", and that the Court did not need to address the question of whether defendant properly terminated the contract.

The Court ordered the $20,000.00 in earnest money paid by defendant should be credited toward the damages, and that plaintiff should receive that money plus the additional $36,541.00 in damages she claimed, and also found that plaintiff's claim for attorney's fees was reasonable, and awarded fees of $23,742.50.

Defendant has appealed, and the issue is:

Did the Trial Court err in finding that defendant failed to make reasonable efforts to secure the necessary financing, in violation of the covenant of good faith and fair dealing?

The question of whether the buyer's efforts to obtain necessary financing are reasonable is a question of fact. *Educational Placement Services, Inc. v. Watts*, 789 S.W.2d 902 (Tenn. Ct. App. 1989). Thus, the Trial Court's finding on this issue comes to us with a presumption of correctness, unless the evidence preponderates against this finding. Tenn. R. App. P. 13.

The agreement in this case was conditioned on the defendant's ability to obtain a loan for 100% of the purchase price. The agreement states the buyer will make application for the loan within five days of the binding agreement date, and will pursue approval diligently and in good faith. Plaintiff, a real estate agent herself, accepted the terms of the contract, including the contingency that defendant would have to obtain 100% financing.

The Trial Court found that defendant did not act diligently to pursue the necessary financing, and that he only made one inquiry within the five day period, which was an "informal telephonic preliminary application" with SunTrust, and concluded that defendant's efforts did not comport with the implied covenant of good faith and fair dealing.

A review of all of the evidence in this case shows, however, that defendant did, through his agent, Ms. Grissom, apply to four different lenders for 100% financing, only to learn that SunTrust was the only lender who actually offered such programs. A representative at Wells Fargo testified that she spoke to defendant by phone, but told him that they had no program by which they could loan 100% of the purchase price. Defendant then made an

-3-

application by phone with SunTrust, who did offer 100% financing, and the SunTrust representative testified that the telephonic application was considered a formal loan application even though it was not signed.

She testified that SunTrust had two programs which offered 100% financing, one of which was for doctors, and the other for persons with very high incomes. She testified that defendant could not qualify for the physician program, because he was a dentist and not a doctor. She testified that she then tried to qualify him under the high income loan, and asked him for his tax returns, which he provided. She testified that after she received the tax returns, she tried to qualify him for the high income loan, but he could not qualify. She testified that she let defendant and his realtor know that he did not qualify on June 27, and then faxed a denial letter to the realtor on June 27.

The evidence also showed that at some point prior to June 21 (while the application with SunTrust was still pending), defendant also made an application with Lending Tree via the internet, and then was contacted by and met with Mr. Heffington, who testified that he made inquiry to at least 6 or 7 lenders about obtaining 100% financing for defendant, only to learn that it was not offered by any of them. Contrary to the Trial Court's findings, the proof preponderates that the defendant and others acting on his behalf made inquiries to almost a dozen lending institutions, only to learn that SunTrust was the only institution who offered any 100% financing programs. The evidence showed that defendant formally applied for financing through SunTrust and supplied all the necessary information, including his tax returns, but could not qualify for 100% financing due to his income level. The denial letter from SunTrust shows that financing was denied solely due to insufficient income, and not because the application or documentation was somehow lacking, as the Trial Court's Opinion suggested.

Both parties in this case rely on our Opinion in *Hudson v. Head*, 1995 WL 555638 (Tenn. Ct. App. Sept. 21, 1995). In *Hudson*, the Court was asked to determine whether buyers should have been refunded their earnest money and given their attorney's fees when they failed to close on a real estate contract because they could not obtain the necessary financing to satisfy the financial contingency. *Id*. Pursuant to the contract, the sale was contingent upon the buyers being able to obtain financing (with no certain terms) and the buyers were to "immediately apply for the necessary mortgage loan". *Id*. The proof showed that the buyers called several lending institutions to inquire generally about rates and terms, and then went to Home Federal to speak to a loan officer, where they were allegedly told that they could not be approved until they sold their existing homes, and that they should not apply until they had done so because the bank only had a lock-in period of 45 days. *Id*. The buyers testified that they put one existing home on the market, and waited to fill out the loan application until closer to the closing date. *Id*. The buyers only filled out one application for

a loan, after waiting 3 months to do so, and were approved only if they could sell their existing homes (which did not occur by the scheduled closing date). *Id*.

This Court found that such actions by the buyers were not reasonable and showed that the buyers did not act in good faith. *Id*. There was some testimony that the buyers were not concerned because they knew they could "get out of" the contract. *Id*. We ruled that the sellers would keep the earnest money and the buyers would pay their own attorney's fees. *Id*. The Court relied on the same ALR annotation relied upon by the Trial Court in this case, wherein it is stated:

> Because the question of sufficiency of effort clearly depends upon the facts, or what the purchaser actually did, the attorney representing the purchaser must be prepared to marshal as extensive an array of loan applications and rejections from as many different financing sources as possible in order to show the client's effort and its lack of success. This applies equally to the attorney representing a buyer who sincerely tried and was unable to arrange financing, and the attorney whose client decided he did not desire to go through with his purchase of the property....

*Id., quoting Annotation, Sufficiency of Real-Estate Buyer's Efforts to secure Financing Upon Which Sale is Contingent*, 78 A.L.R.3d 880, 884 (1977).

As the *Hudson* court noted, in these cases the outcome depends on the facts in the given case. In this case, there is no suggestion that defendant was merely trying to "get out" of the contract by not making the effort to obtain financing, as was suggested in *Hudson*. This defendant clearly sought financing with multiple lending institutions, and was unable to get financing on the terms specified in the contract. It therefore appears that any further inquiries or applications would, indeed, have been futile. *See also Vonkrosigk v. Rankin*, 2000 WL 1483209 (Tenn. Ct. App. Oct. 10, 2000)(buyer was shown to have acted in good faith to obtain financing, where she made only one application, and was denied due to her high debt to income ratio); *Dowd v. Canavan*, 2009 WL 2341522 (Tenn. Ct. App. July 30, 2009)(buyers only applied to two banks but this was found to be sufficient and buyers acted in good faith).

The evidence preponderates against the Trial Court's findings of fact regarding the reasonableness of defendant's efforts to obtain financing in this case. Defendant demonstrated that he sought 100% financing from multiple institutions, and was denied either because such financing was unavailable or because he did not qualify. We reverse the Judgment of the Trial Court and remand for determination whether the contract was properly terminated, a question which the Trial Court pretermitted.

The cost of the appeal is assessed to plaintiff, Elizabeth C. Wright.

_____
HERSCHEL PICKENS FRANKS, P.J.